EDWARD H. GILLILAN, Respondent, *v.* THE SUN MUTUAL INSURANCE COMPANY, impleaded with others, Appellants.

S. and L. forming the partnership of S. & Co., being, together with the plaintiff and others, owners of the ship J., in different shares; and S. & Co., being the ship's husbands and agents of the owners, authorized to make insurance on her freight, effected an insurance with the defendant, an insurance company, on her freight, in their own name, against loss at sea, on account of whom it may concern, loss payable to them.    A total loss occurred, and a portion of the insurance money having been paid, and they becoming insolvent, the plaintiff having a debt due him from them, as the ship's husbands, for earnings and receipts on former voyages, notified the company, that the policy was for account of the owners, of whom he was one; and in consequence of the insolvency of S. & Co., he forbade payment to them, and stated that he should take measures to enforce his claim.    The company, notwithstanding the notice, paid the balance of the insurance money to S. & Co.—*Held,* in an action brought by the plaintiff, for his share from the company, that the payment was authorized, and he could not recover.

Assuming, that the relations between the owners were, as to the freight, that of partners, both after dissolution, as well as during the existence of a partnership, each partner may receive the debts due the partnership, and give discharges, and this notwithstanding previous notice, of the dissolution, to the debtor, and the insolvency of the partner to whom payment is made.

APPEAL from the General Term of the Supreme Court, in the first district.

THE plaintiff and the defendants (other than the insurance company) were the owners of the ship Jamestown prior and during the year 1859, and down to the time of her loss at sea, in the different proportions or shares particularly stated in the findings of the court at Special Term. The defendants, Oliver Slate, Jr., and James H. Lyles, who were copartners, trading under the firm of Slate & Co. during all that time, were ship-husbands and agents of her owners, authorized to make insurance on her freight, receive her earnings, and make disbursements and engagements necessary to her use and employment as a freighting ship; and on the first day of November, 1859, they effected an insurance by the defendants, the Sun Mutual Insurance Company, to the amount of $17,000, on her freight, which was valued at that sum, against loss at sea, in their own name, on account of whom it may concern, loss payable to them. A total loss occurred during the continuance of the risk assumed, and the whole amount of the insurance money was paid to the said Slate & Co. by the insurance company.

In the month of November, 1859, Slate & Co. failed, and became insolvent. At that time there were various amounts due to the plaintiff from them, as ship husbands of the said ship for the earnings and receipts on her former voyages; and on the 24th day of December of that year, the loss having previously occurred, he gave a notice in writing to the said company, that the policy on the freight of the said ship, effected in their office, was for account of the owners, of whom he was one, and that in consequence of the failure and insolvency of said Slate & Co., he forbade the payment to them, and that he should take measures without delay to enforce his claim to the said policies. The sum of $3,547.68 of the insurance money, had, on the day previous to the delivery of that notice, been paid by the company to Slate & Co., on the said policy, and on account of the said owners, and the balance was paid to them as follows: The sum of $8,500 on the 13th

day of January, 1860, by the surrender, on the 23d day of the same month, of a premium note for $750, covering the premium $297.50 on the risk under the said policy, and for the premium on other risks, and the sum of $4,104.69 on the 23d day of the ensuing February, when the loss became due, the interest on the average payments, amounting to $97.63, being deducted, and making up the whole of the loss.

This action was commenced on the 19th day of January, 1860.

The court, at Special Term, among other matters, found as a conclusion of law upon the preceding facts, " that the amount of the loss and sum payable by the defendants, the Sun Mutual Insurance Company, under the insurance on her freight made on the voyage whereon the ship was lost, belonged to the owners of the ship Jamestown, jointly, according to their respective shares and proportions aforesaid, and subject to their contribution remaining unsatisfied for advances and charges by any of them for their common benefit;" that the payment on account made by the said company on the 23d day of December, was made to the said Slate & Co., " for the joint benefit of all the owners of the ship, and to be brought into the accounts accordingly;" and that the sums paid by them, after the notice given to them by the plaintiff on the next day thereafter, were so paid in their own wrong, and were no bar to a recovery from them of the unpaid amount of the said policy by the other owners, according to their respective rights and proportions.

A reference was ordered, to state the accounts of the said Slate & Co., and to determine the amounts due to the plaintiff, and upon the coming in of the report of the referee, judgment was entered in favor of the plaintiff against the said the Sun Mutal Insurance Company, for the sum of $6,984.18, including $476.85 costs.

This judgment was affirmed, on appeal, by the General Term in the first judicial district, and the case comes before this court on an appeal by the company.

*Joseph H. Choate,* for appellants.

*D. D. Lord,* for respondent.

LOTT, J.    The policy of insurance issued by the appellants created a legal obligation on them to pay the loss, which subsequently occurred, to Slate & Co.   It was issued to them, and in their name, and the loss was, by its terms, payable to them, and by its payment the appellants have complied with and fulfilled that obligation.   Such, it is conceded, would be its ordinary and general effect; but it is claimed on behalf of the respondent that the insurance, although made in the name of Slate & Co., "was for the benefit of, and in trust for all the joint owners as a copartnership fund," that "by the loss of the ship the partnership became of necessity dissolved," and that the payments after the notice of 24th December, 1859, by the respondent, apprising them that he had an interest, and forbidding payment to Slate & Co., followed by this suit, were unauthorized and fraudulent as to him.   Such is not the legitimate operation or consequence of that notice.

Assuming, as the plaintiff claims and the court below held, that the relation between the owners was that of partners, the only facts of which the appellants were notified, were that he was one of those partners, that the insurance was for their account, that Slate & Co. had failed and become insolvent, and that he would, without delay, take measures to enforce his claim to the policy.   They at most place him in the same situation as if the policy had been issued in the names of all the partners as such, and the loss had been declared to be payable to them instead of "Slate & Co., on account of whom it may concern, loss payable to them."

Conceding that the policy may be so construed, the appellant was, nevertheless, authorized to pay the loss to Slate & Co., and was thereby discharged from all liability therefor.

It must be considered as settled by the decision of this court, in *Robbins* v. *Fuller* (24 N. Y. Rep., p. 570), after a full and able examination of the question, that either partner may, after the dissolution as well as during the continuance of a copartnership, receive a debt due to it, and give a valid and effectual release therefor, notwithstanding notice of such dissolution to the debtor.

An agreement between the partners, that one of them shall collect and be entitled to the assets for his own benefit to the exclusion of the other, does not affect or interfere with that right and authority in respect to persons unacquainted with that fact. (*King* v. *Smith*, 4 Carr. & Payne, 108; 19 Eng. Com. Law Rep., 299.) The case of *Cram* v. *Cadwell* (5 Cow., 493), cited by the respondent, is not inconsistent with that doctrine.

It there appeared, that the debtor had notice of the agreement, which the learned justice giving the opinion, said was "a virtual conveyance" by one partner, "of his interest" to the other.

It was, therefore, treated as the release of a debt by the original creditor after notice of an assignment thereof to another person, and properly held to be a fraud on the assignee, and therefore ineffectual and imperative as against him.

I may add that it was distinctly stated in that opinion, "that during the existence of a partnership, each partner may receive the debts due and give discharges. So after a partnership is dissolved without some contract or conveyance by one to the other."

The views above expressed lead us to the conclusion that the appellant was not bound or in any manner affected by any equities as between the owners, resulting from the part nership transactions, by reason or in consequence of the notice referred to. No reference or allusion whatever was made to such a claim. It has already been shown that a debtor is not affected by any *express* agreement between the partners, without notice thereof, and there is no reason or principle, why he should be charged with any undisclosed equities. He never could pay either partner with safety, and the allowance of such equities would, in effect, nullify the general power and authority vested in each to settle the partnership business.

In the case of *Robbins* v. *Fuller* (*supra*), when the whole of the debt there in question, amounting to nearly $3,000, was sold and assigned, and afterward discharged for $100,

without the knowledge or consent of one of the partners, it appeared that there were no copartnership debts existing at the time of the assignment, and it was claimed that one-half of the debt, after crediting the $100 paid, was collectible. DENIO, J., after considering the effect of the dissolution of the firm, on the rights of the several partners, and coming to the conclusion that this circumstance did not of itself deprive the partner with whom the purchaser of the debt dealt, of the power to dispose of it at such sum as he should consider it worth, and then, after stating that such purchaser was unacquainted as to any other facts which might change the situation or impair the powers of the respective partners, he adds: "My own opinion is, that the fact that the debts against the firm had all been discharged, would not affect the question, where the accounts between the partners was not shown to have been adjusted, though the persons dealing with the single partner were acquainted with that fact, but certainly the authority of each partner, in regard to matters of liquidation, would continue in respect to persons who were unacquainted with the fact that no indebtedness of the firm existed;" and SMITH, J., after delivering, as is stated in the report of that case, an opinion to the same effect, in respect to the general authority of the partners after dissolution, concluded by saying "the right of the respective partners, after dissolution, to collect or discharge the debts of the copartnership cannot depend upon the state of the accounts between the partners. Third persons cannot know the state of such accounts and cannot be required to ascertain, at their peril, whether the partnership debts are or are not paid." The majority of the court concurred in those opinions.

It then remains to be considered whether the notice by the respondent to the appellants not to make payment to Slate & Co., in consequence of their failure and insolvency on the commencement of this suit, made the subsequent payments invalid and ineffectual.

I know of no rule or principle by which the inability of an insolvent member of a copartnership to pay his individual

debts should, of itself, deprive him of or interfere with his general power or authority as a partner, or by which, the notice of such fact, by another partner to a debtor, should make a payment to such insolvent member invalid. That would operate as an injunction more summary in its effect than is recognized by the most liberal rule applicable to such a remedy.

The subsequent commencement of this action did not have any greater effect than the notice.

It was commenced by the service of a summons upon the appellant, on the 19th day of January, 1860, but it appears from a statement in the case that the complaint was verified on the 31st day of March, and was not served till the 4th day of April thereafter. At that time, the whole insurance money had been paid to Slate & Co. Until the service of that complaint, the appellant had no knowledge or information of any additional facts beyond that contained in the notice, or of any further claim than was made therein.

In that, the respondent, after referring to the nature of his claim, concluded by saying, " I shall take measures to enforce my claim to these policies." The appellant was, from the terms and tenor of the notice, justified in assuming that the facts stated therein were those on which relief was demanded in the action. If, however, he is chargeable with notice of all the statements in the complaint from the time of the service of the summons, the additional facts alleged tending to show that the respondent, on the settlement of the unadjusted accounts of the partnership, would be entitled to more than a share of the insurance proportional to his interest in the ship, were not within the principle of the decision in *Robbins* v. *Fuller* (*supra*), as stated in the opinions referred to, sufficient without an injunction or the appointment of a receiver by the *court*, to prevent the payment of the money subsequently paid to Slate & Co. See also *Green* v. *Sluyter* (4 Johnson Ch. Rep., p. 38, &c.)

There are no allegations in the complaint of fraud, or any facts or circumstances to raise the presumption that there

would be a misappropriation of the funds by Slate & Co. All that is stated bearing on that question, beyond the fact of their failure and insolvency on the 12th day of November, 1860, is, that they "are no longer fit depositories of the said moneys," and there is no other found by the judge at Special Term in his findings of fact. On the contrary, there is a finding "that on the 10th day of March, 1860, after the commencement of this action, Slate & Co. rendered to the plaintiff an account of the earnings and disbursements of the ship, of the proceeds of said insurance on her freight, and of their charges in respect thereof for the period from and after the 1st day of July, 1859," and that at the time of rendering such last mentioned account, Slate & Co. paid the plaintiff $992.61, being the share or proportion due him, as stated in said account; and it also appeared by those findings that "due accounts" had been rendered to the plaintiff from "time to time of the earnings of the ship and his proportion thereof, down to July 1st, 1859, and had also rendered him a recapitulatory dated December 10th, 1859," of which a copy is set forth in the findings.

There was therefore nothing in the case that warranted any judgment whatever against the appellant, and the complaint as to him should have been dismissed with costs. It is therefore unnecessary to examine whether the accounts of Slate & Co. were properly stated.

The judgment against the appellant at Special Term, and that affirming it at General Term, must, for the reasons above stated, be reversed, and a new trial ordered, costs to abide the event.

MASON, J., also read an opinion for reversal.

All the judges concurring for reversal.

Judgment reversed and new trial ordered.