HENRY HILTON et al., Respondents, *v.* JACOB H. VANDERBILT, Impleaded, etc., Appellant.

A factor to whom goods are consigned for sale is bound to follow the instructions of his principal as to terms of sale, although he has made advances on the goods; unless the principal, after reasonable notice, fails to repay such advances.

Upon the dissolution of a partnership it is competent for the copartners to constitute one of their number a special agent for winding up its affairs; and when this has been done, third persons who, with notice of the arrangement, deal, in matters connected with the liquidation, with a partner other than the one thus authorized, are subject to the equitable rights of the other partners.

Upon the dissolution of the firm of U. & Co., V., one of the copartners, by agreement between them, assumed the payment of all the debts, and took charge of the liquidation and settlement of its affairs; U., the other partner, having nothing to do therewith. Of this arrangement plaintiffs, who were the factors of the firm, had notice, and they were directed by V. not to sell the goods of the firm in their hands at less than a specified price. Notwithstanding this, plaintiffs, without any notice to V., upon consultation with, and by the direction or advice of U., who had become their clerk, and who was insolvent, sold the goods at a less price. In an action to recover an alleged balance for advances made by plaintiffs to the firm, *held* (FOLGER, Ch. J., ANDREWS and DANFORTH, JJ., dis-

senting as to the facts, not as to the law), that the sale was made without lawful authority; that U. had parted with all right to control or direct as to sales.

*Napier* v. *McLeod* (9 Wend, 120), and *Porter* v. *Taylor* (6 M. & S, 156), distinguished.

(Argued June 11, 1880 ; decided November 30, 1880.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, affirming a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought by plaintiffs as members of the firm of A. T. Stewart & Co., to recover a balance alleged to be due that firm on account for advances made by it to the late firm of B. Underhill & Co., of which firm defendants were the members. Defendant Vanderbilt alone appeared and defended.

It appeared that in 1870 the two firms entered into an agreement by which Underhill & Co., who were manufacturers of woolen goods, agreed to consign all of their production to Stewart & Co., to be sold upon a specified commission, Stewart & Co. to make advances to the amount of a specified percentage of the market value of the goods. The firm of Underhill & Co. was dissolved on or about December 1, 1875, and by agreement of the parties, Vanderbilt assumed the payment of all the debts, and was to take exclusive charge of the settlement of its affairs, and the liquidation of its debts, Underhill having nothing to do or to say in reference thereto. Stewart & Co. were advised of this agreement. At that time Underhill was in the employ of Stewart & Co. as clerk, and was insolvent. Stewart & Co. then had on hand a large amount of goods belonging to Underhill & Co. ; these they were directed by Vanderbilt *not to sell* at less than $1 per yard. Notwithstanding this they did sell at a price considerably less, without notice to Vanderbilt, but on consultation with Underhill, and in pursuance of his directions or advice. Plaintiffs credited the defendants with the amount realized on the sales, and claimed to recover the balance thus made to appear.

*A. C. Brown* for appellant.    It is competent for partners, by the act of dissolution, to constitute one of their number the special agent for winding up the joint concern.    (*Robbins* v. *Fuller*, 24 N. Y. 572; *Fettretch* v. *Armstrong*, 5 Robt. 339; *Gillilan* v. *Sun Mutual Ins. Co.*, 41 N. Y. 376.)    Where goods are sent to a factor for sale, without instructions as to the time or terms of sale, he is at liberty to sell at such time and on such terms as, in the exercise of a sound discretion, he shall deem proper for the interest of his principal.    (*Marfield* v. *Goodhue*, 3 N. Y. 62.)    To constitute ratification by means of acquiescence, or the omission to make the unauthorized act of the agent the subject of objection, the principal must have information giving him notice of what may have been done to his prejudice. (*Price* v. *Keyes*, 1 Hun, 189; *Stenton* v. *Jerome*, 54 N. Y. 480; *Quincy* v. *White*, 63 id. 370;   *Guernsey* v. *Rexford*, id. 631.)

*Henry H. Anderson* for respondents.    A consignor, upon paying advances and expenses, may at any time resume control over his property, or the general rule as to factors may be modified by special contract. (*Brown* v. *McGraw*, 14 Pet. 480; *Field* v. *Farrington*, 10 Wall. 141; *Man* v. *Laws*, 117 Mass. 293; *Given* v. *Lemonee*, 35 Mo. 110;   *Wolf* v. *Koppel*, 5 Hill, 458; *S. C.*, 2 Denio, 368; *Ex parte White*, L. R., 6 Ch. 403.)

MILLER, J.    It is a well-settled rule, that while a factor to whom goods are sent for sale, without instructions as to the terms of the sale, is at liberty to sell at such time and upon such terms as he may deem proper in the exercise of a sound discretion, yet he is bound to obey the subsequent instructions of his principal as to the sale, although he has made advances, unless the principal, after reasonable notice, fail to pay such advances. (*Marfield* v. *Goodhue*, 3 N. Y. 62.)    So long as the firm of Underhill & Co. was doing business, either member of that firm was authorized to give instructions as to the terms of sale of the goods by Stewart & Co., the factors, and they had a right to follow such directions.    But upon a disso-

lution of the firm it was competent for the copartners to con-
stitute one of their number a special agent for winding up its
affairs, and when this was done, parties who, with notice of the
arrangement, deal, in matters connected with the liquidation,
with the partners not thus intrusted, are subject to the equitable
rights of the other partners. (*Robbins* v. *Fuller*, 24 N. Y. 572.)
If the arrangement made comes to the knowledge of the parties
dealing with the firm, it is sufficient to put them on guard; and
if they act in disregard of such knowledge, they must be held
responsible for consequences which ensue. In the case at bar,
the proof shows that upon the dissolution of the copartnership
of Underhill & Co., by arrangement Vanderbilt assumed the
payments of all the debts, took charge of the liquidation, and
the defendant Underhill had nothing to do with or to say about
the affairs of the late firm. The plaintiffs, through their agent,
were advised by Vanderbilt as to the situation, and informed by
Vanderbilt that he controlled the affairs of the firm, that he
had assumed the debts and the whole responsibility of settling
up the concern from the time of its dissolution, and would
see about the sale of the goods; and he directed that they
should not be sold for less than one dollar a yard. Notwithstand-
ing the notice and instructions given, the plaintiffs, without any
notice to Vanderbilt, after consultation with Underhill, pro-
ceeded and sold the goods for a less amount than was directed
by Vanderbilt. We think that this was done without law-
ful authority, and that the request to find to the effect "that
plaintiffs had notice of the dissolution of defendants' firm, and
that Vanderbilt was the agent for winding up its affairs, and
that after such notice they recognized and dealt with him as
such special agent," was material and should have been granted
by the referee. The power conferred by Underhill upon Van-
derbilt deprived him of all right to interfere. It cannot be
questioned that Underhill had parted with all right to control
the settlement of the copartnership debts, and Vanderbilt as-
sumed all the responsibility and was liable to pay the debts.
He, therefore, had a right to direct what should be done, and
his power was more than a bare authority, liable to be revoked

by his copartner, and which did not invalidate the acts of either. Underhill, therefore, had no right to interfere, and Stewart & Co., having notice of the exact relations of the copartners, were not justified in consulting with Underhill, who was then in their employment, or in following his advice or direction. We are referred to no reported case which upholds the doctrine that under such circumstances the consignee is relieved from the responsibility which he is under to the partner entitled to control the settlement of the copartnership affairs. None of those relied upon are in point, as is apparent from an examination of the cases referred to.

In *Napier* v. *McLeod* (9 Wend. 120), a deed or instrument in writing was executed, upon the dissolution of a copartnership, by two of the members to the third, authorizing him to receive and collect the outstanding debts, etc., and generally to conclude the unfinished business of the firm, and constituted the latter " their true and lawful attorney, *irrevocably*," for the purposes mentioned, with power to give acquittances, etc. It was held that this power of attorney did not operate as an assignment of the interest of the two members of the firm, and did not render inoperative a release subsequently executed by one of the other members of the firm to one of its debtors. SAVAGE, Ch. J., says: " I apprehend the mere expression that the power is irrevocable does not make it so; if no interest is conveyed, and nothing but a bare authority, uncoupled with an interest, is granted, the power which creates can destroy; and he who gives a naked authority can revoke it." It is also said that Napier was constituted attorney for the firm, and " in their names and the name of the firm and in their behalf, to ask, demand," etc., thus laying some stress upon the phraseology employed. It will be noticed that in this case, a construction was placed upon the instrument executed; and it was held that it was not for the use of Napier, or for his exclusive benefit, and that he was only to demand and receive the debts in the name of and in the behalf of the firm, and the rights of the partners were not changed. In the case at bar Vanderbilt had full control, and no interest whatever remained in the other

partner.  The agreement amounted to an absolute transfer of Underhill's interest, and he had no right to give any directions as to the settlement of the affairs of the company.  It is also to be noticed that Stewart & Co. had full knowledge and notice that Vanderbilt had assumed the debts, and of the actual *status* of the partners toward each other in reference to the settlement of their affairs.  In the case of *Gram* v. *Cadwell* (5 Cow. 489), it was held that where there was a special agreement between partners, on dissolution, in regard to the settlement of their affairs, by which one of them was to continue business, assume all debts, and that the money paid by the outgoing partner should be paid back by the other within a limited time, that a separate interest was created in the remaining partner; and a subsequent release of a debt by the outgoing partner, to a creditor having notice of the agreement, was void.  This case sustains the doctrine that where the partner has thus parted with his interest, and the creditor has notice of such fact, he has no control over the copartnership affairs, and does not aid the position of the plaintiffs.  *Porter* v. *Taylor* (6 M. & S. 156) merely holds that payment to one partner, after a person has been appointed to collect the debts, is good, and does not affect the question considered.

None of the cases, therefore, hold that under circumstances like those here presented, the partner who has surrendered the right to control, as was done by Underhill, can interfere with the partnership affairs by giving directions in regard to them, or that a party who has been advised of the actual state of the case, and has full knowledge of the facts, is justified in following such directions if given.

The fair construction of the evidence is that Vanderbilt had the entire responsibility of paying the debts and closing up the partnership, and claimed to exercise this right in reference to the goods in question, and Stewart & Co. were fully aware of such claim.  They were notified not to dispose of the goods for less than a price he put upon them.  They knew that Vanderbilt was solvent, and upon notice able to pay any deficiency, and that Underhill, who had become their clerk, was insolvent,

and they assumed to act upon consultation with Underhill alone. In view of these facts, we think they had no right to act without notice to Vanderbilt, at least of their intention, and by doing so, Vanderbilt's rights as a partner might be seriously affected. It is not a question of mere authority alone, but involves an absolute right of a solvent partner, who had assumed to pay the debts, to supervise and manage the affairs, in accordance with an arrangement made between his copartner and himself for the joint benefit of both. The finding refused was clearly important, and might seriously affect the disposition of the case by the referee; and for the error stated, the judgment must be reversed and a new trial granted, with costs to abide the event.

ANDREWS, J. (dissenting). The general rule that a factor receiving goods on consignment for sale is bound in selling them to follow the instructions of his principal, is not, in the absence of a special agreement, changed by the fact that the factor is under advances, and has a lien on the goods for their repayment. This was decided in *Marfield* v. *Goodhue* (3 N. Y. 62), where the question received careful consideration, and so far as it is inconsistent with the case of *Brown* v. *McGran* (14 Pet. 495), must be regarded as settling the law in this State contrary to the ruling in that case.

It is unnecessary now to consider whether the case of *Brown* v. *McGran* can stand upon its special circumstances, consistently with the decision in *Marfield* v. *Goodhue*. It is sufficient to say that there are no facts which take the case now before us, out of the general rule declared in *Marfield* v. *Goodhue*. The contract between Underhill & Co. and Stewart & Co., under which Stewart & Co. received the goods of Underhill & Co., created the ordinary relation of principal and factor between the parties. The contract, it is true, provided that Stewart & Co. should make advances on the consignments, but this fact did not, in the absence of a special agreement, enlarge the authority of the factors, or entitle them to sell the goods in disregard of the instructions, unless Under-

hill & Co., after reasonable notice, failed to repay advances made under the contract. Stewart & Co. upon such failure would be entitled, upon notice, to enforce their lien by a sale of the goods. (See *Smart* v. *Sandars et al.*, 5 C. B. 895.) While the partnership of Underhill & Co. continued, it is plain that either partner had authority to give directions to Stewart & Co. in respect to the sale of the goods, and that the consignees would have been justified in acting thereon, provided they acted in good faith in dealing with the property. The right of one partner to sell the partnership property in the prosecution of the partnership business, and to dispose of the partnership assets for the payment of partnership debts springs from the principle that each partner is the general and accredited agent of the others in the business of the partnership, and the partnership is bound by the acts of either partner within the general scope of the agency, and third persons who acquire rights by the exercise of this general authority are not affected by limitations or restrictions contained in the partnership articles, or imposed by any subsequent agreement between the parties of which they had no notice. The authority of partners is not absolutely determined by dissolution of the partnership. One partner cannot, thereafter, bind the firm by new engagements not connected with the liquidation. But partners continue, after dissolution, joint tenants of the firm property. Each has an interest that the assets shall be collected, and that the partnership debts shall be paid, and the general authority which each possessed before the dissolution, to collect the debts, and dispose of the property of the partnership, continues for the purpose of winding up the concern. (3 Kent, 63.) The right of each partner, after dissolution, to act in matters connected with the winding up, cannot, we conceive, be divested by mere notice from one partner, so as to prevent transactions relating to the liquidation between third persons and the partner whose authority is attempted to be restricted by notice, from being effectual and binding, provided the dealing is not collusive or fraudulent. (*Gillilan* v. *Sun Mutual Ins. Co.*, 41 N. Y. 376.) But it is, doubtless, competent for partners on a

dissolution, by agreement, to confide to one of the partners the exclusive control and management of the liquidation. And when such an agreement is made binding as between the partners, it will exclude the implied authority possessed by each partner, and prevent third persons, having notice of the arrangement, from dealing, in disregard of it, with the partners who have renounced their control of the partnership affairs. (*Robbins* v. *Fuller*, 24 N. Y. 572.) But a bare authority conferred by the partners upon one of their number, which may be countermanded at any time, will not invalidate acts of either partner within the general power. In *Napier* v. *McLeod* (9 Wend. 120), two partners, on the dissolution of a firm, executed a power of attorney to the third partner, constituting him their attorney *irrevocably*, to demand and receive, on their behalf, all debts, dues and demands of the firm, and one of the two partners who executed the power subsequently executed to the defendant, who had notice thereof, a release of a debt owing by him to the firm, and it was held that the release was valid on the ground that the power did not operate as an assignment of any interest of the partners executing it, but was an authority merely, and, therefore, revocable. (See, also, *Gram* v. *Cadwell*, 5 Cow. 491; *Porter* v. *Taylor*, 6 M. & S. 156.) *A fortiori* a mere assumption by one partner, on a dissolution, of an exclusive right to control the winding up, although the other partner may for a time acquiesce in the claim, will not preclude him from subsequently exercising the power of a liquidating partner.

The application of the doctrine stated, to the facts in this case, is an answer to the claim that Stewart & Co. sold the goods in violation of the instructions of Underhill & Co. The latter firm was dissolved in December, 1875. The evidence does not warrant the inference, or at least it did not require the finding, that the defendant Vanderbilt was, by any agreement between him and Underhill, constituted the exclusive agent for winding up the partnership. It does appear that, after the dissolution, Vanderbilt claimed the exclusive right to control the sale of the goods of Underhill & Co., and that

Stewart & Co. were cognizant of this claim, and soon after the dissolution he instructed Stewart & Co. not to sell the goods below a price named by him. Vanderbilt was the solvent partner in the firm, and Underhill had become a clerk in the employment of Stewart & Co. The claim of Vanderbilt that, under the circumstances, he should alone control the goods, was certainly not unnatural, but the claim to do so did not *ipso facto* exclude the power of Underhill. Vanderbilt could change the limit of price first fixed by him, and Underhill could also revoke Vanderbilt's instructions, and authorize, as he did, a sale at a less price than that fixed by Vanderbilt. Underhill, although insolvent, had an interest to have the goods sold at the best price, and a right to exercise his judgment as to the time and terms of sale. It is to be observed that the question here is one of authority only. It is not claimed that Stewart & Co. were guilty of any fraud, or that they colluded with Underhill to sacrifice the goods. If this issue had been made, and there was any evidence tending to sustain it, the relation which Stewart & Co. held to Underhill would be a significant circumstance, and give great weight to any evidence tending to show bad faith on the part of Stewart & Co. But in the absence of fraud, we are of opinion that Stewart & Co. were justified in acting upon the instructions of Underhill, and that the claim that they sold in violation of instructions cannot be sustained.

The issue of usury was also, we think, properly overruled. The agreement of July 1, 1874, was not usurious on its face. The giving of extra time to purchasers to increase the ·sales is the reason stated for the allowance of the additional discount. If extra time was given, the risk of Stewart & Co. on their guaranty was increased. If the benefit of extra time was taken by purchasers by way of discount, they had the benefit of the deduction. If in making up the account Stewart & Co. charged a discount, either when extra time was not given, or when no discount to purchasers had been allowed, the account was subject to correction. But we see in the case no proof that the agreement of July 1, 1874, had any connection with

a loan, or from which an inference can be drawn that it was a cover for interest on advances beyond the lawful rate.

We think that no error was committed on the trial, and that the judgment should be affirmed.

RAPALLO, EARL and FINCH, JJ., concur with MILLER, J.

FOLGER, Ch. J., and DANFORTH, J., concur with ANDREWS, J.

Judgment reversed.