THE M. M. WALKER COMPANY v. THE DUBUQUE FRUIT & PRODUCE COMPANY et al.

**Factors:** SALES ON CREDIT: *Implied power to make.* In the absence of instructions or usage to the contrary, a factor has implied power to sell the goods of his principal on a reasonable credit, provided he exercise due care with respect to the responsibility of the purchaser and in collection of the price.

NOTICE OF SALE TO PRINCIPAL: *Required only on sales to enforce factor's lien.* . Where a sale by a factor is not made for the purpose of enforcing his lien for charges and advances, and no subsequent instructions are received, the question of the principal's right to notice is not involved and should not be submitted to the jury.

SALE BY PRINCIPAL: *Subsequent sale to enforce factor's lien.* Though a factor has a lien on his principal's goods for charges:

and advancements, he has no right to sell them after learning that the principal has already sold them, unless such sale is necessary for the enforcement of his lien.

WAIVER OF LIEN BY WRONGFUL SALE: *Effect on sale by principal.* Where a factor by wrongful sale of his principal's goods waives his lien for advances and charges, one purchasing of the owner, before the sale by the factor, may recover the goods of the buyer without deduction of the amount of the advances, which in that event constitute but a naked debt of the principal.

Plea and Charge: WHEN PLEADING DOES NOT WAIVE RIGHT TO CORREQT INSTRUCTIONS. Acquiescence in the court's erroneous view of the law, by amending the pleadings and introducing evidence to meet the opinion, is not a waiver of the error, precluding the party from insisting upon a correct statement of the law in the instructions.

*Appeal from Dubuque District Court.*—HON. FRED O'DONNELL, Judge.

THURSDAY, APRIL 11, 1901.

ACTION in replevin for apples. See 106 Iowa, 245. From the verdict and judgment against them, defendants appeal.—*Reversed.*

*J. C. Longueville* for appellant.

*C. N. Dohs* and *Lyon & Lyon* for appellee.

LADD, J.—One Scott, of Medina, N. Y., consigned to the Dubuque Fruit & Produce Company, a corporation engaged in business as a commission merchant, four car loads of apples. A comparatively few barrels of these had been sold prior to December 17, 1896, when Scott reached Dubuque. He interviewed Muntz, the president and manager of the company, who then advanced $100 in addition to that previously paid, and then visited plaintiff, to whom it is claimed he sold all the apples. The theory of the plaintiff is that Scott sold to it the apples on Muntz's suggestion, and that when Cyril Walker, a representative of the firm, presented Scott's order on the company for apples, the

latter, through Muntz, at first offered to deliver them upon repayment of the money advanced, together with freight, cartage, storage, and commission, which Walker said he would pay, but soon thereafter stated that he had changed his mind, and refused to turn them over. On the other hand, the defendants insist that they supposed that the company was to handle the apples, until Walker and Scott entered the company's place of business to examine the apples, on the morning of the eighteenth of December; that a sale to plaintiff, or the payment of advances or charges by Walker, was not mentioned by or to Walker, nor was any order presented; that Muntz offered to let the apples go, upon the the payment of advances and charges, but Scott refused to pay drayage, storage, and commission; that the latter then said he wanted them sold, regardless of price, and the company made a sale shortly afterwards to one Cartigney, a nephew of Muntz, and an employe in his wife's store, of which he was manager, receiving $5 in cash and a promissory note for the remainder, payable in 30 days. It was held on the former trial that the evidence was such that the issues respecting the *bona fides* of this alleged sale to Cartigney, and the waiver of the company's lien for advances and charges, should have been submitted to the jury. 106 Iowa, 245.

I. After both parties had rested, the court suggested the notion that a sale on credit, unless so authorized, would be of no validity. Thereupon defendants offered evidence of the existence of a general custom among commission merchants throughout the country to sell on 30 days, or longer time, and amended their answer accordingly. Appellee insists that, having acquiesced in this erroneous view, the error was waived. We know of no rule which precludes a party from meeting the opinion of the trial court in the matter of pleading and the introduction of evidence, and yet insisting upon a correct statement of the law in the instructions. Indeed, it is a general principle

that no more need be proved than sufficient to entitle a party to the particular relief demanded; and if evidence was unnecessarily introduced, even though at the court's suggestion, this did not waive the right to have the jury told, as a matter of law, that the factor, in the absence of instructions, if not against custom, might sell on reasonable credit. The point that the assignment of error is not sufficiently specific is without merit.

II. 'The apples were consigned, without instructions, to be sold by the Dubuque Fruit and Produce Company on commission. It claimed to have sold them to Cartigney on 30 days' time, and took his note for all save $5 of the purchase price. The court, in substance, advised the jury that, unless a general custom of commission merchants to sell on credit was shown, this sale was invalid, and in doing so seems to have relied on *Payne v. Potter,* 9 Iowa, 549, and *Durant v. Fish,* 40 Iowa, 559. In the first of these, the agent selling the horse was not a factor, as he does not appear to have sold on commission; and the opinion proceeds on the theory that he was merely an agent with special authority to sell. A factor or a commission merchant has been defined to be an agent employed to sell property intrusted to his possession by and for his principal, for a compensation usually designated a "commission," but sometimes "factorage." *McGraft v. Rugee,* 60 Wis. 406 (19 N. W. Rep. 530); *Milburn Mfg. Co. v. Peak,* 89 Tex. 209 (34 S. W. Rep. 102); 12 Am. & Eng. Enc. Law, 628. His agency with respect to the particular property is general, unless expressly limited by instructions. In *Durant v. Fish* it was only held that the factor was not liable on loss resulting from retaining goods after refusal to sell on credit to an irresponsible person. The question is *res integra* in this state, and we are inclined to hold, in accord with the great weight of authority, that, in the absence of instructions or usage to the contrary, the factor has the implied power to sell the goods of his principal upon a reasonable credit, provided he exercises due

care with respect to the responsibility of the purchaser and in the collection of the price. *Burner Co. v. Odlin,* 51 N. H. 59 (12 Am. Rep. 45); *Roosevelt v. Doherty,* 129 Mass. 301 (37 Am. Rep. 356); *Van Allen v. Vanderpool,* 6 Johns. 69 (5 Am. Dec. 192); *Lausatt v. Lippincott,* 6 Sar. & R. 386 (9 Am. Dec. 440); *Edgerton v. Michels,* 66 Wis. 124 (26 N. W. Rep. 748, 28 N. W. Rep. 408); *Joslin v. Cowee,* 52 N. Y. 90; *Pinkham v. Crocker,* 77 Me. 563 (1 Atl. Rep. 827); Meachem, Agency, section 990. And he may take a note for the purchase price for his principal's benefit. *Greely v. Bartlett,* 1 Me. 178 (10 Am. Dec. 54); *Goodenow v. Tyler,* 7 Mass. 36 (5 Am. Dec. 22).

III. Another point raised was whether the factor or commission company was bound to give notice before selling, to reimburse it for advances made and expenses incurred. If it can be said that no instructions were given, then the matter of sale is within the discretion of the factor; and, as that is the purpose of his employment, he may sell in the ordinary course of trade without consulting his principal. *Butterfield v. Stephens,* 59 Iowa, 596; 12 Am.. & Eng. Enc. Law, 651. It is only when there are special instructions with respect to price or time of sale, or the like, that notice is required before the property may be disposed of on different terms or at an earlier date. *Hallowell v. Fawcett,* 30 Iowa, 491; *Mooney v. Musser,* 45 Ind. 115. See *Baugh v. Kirkpatrick,* 54 Pa. 84 (93 Am. Dec. 675), wherein it was held that the right to sell to satisfy the factor's lien might not be suspended by the attachment of the property. Perhaps the clearest statement of the law on this subject is found in *Brown v. McGran,* 14 Pet. 479 (10 L. Ed. 550): "Wherever a consignment is made to a factor for sale, the consignor has a right, generally, to control the sale thereof according to his own pleasure, from time to time, if no advance has been made or liability incurred on account thereof; and the factor is bound to obey his orders. This arises from the ordinary relation of principal and agent. If,

however, the factor makes advances or incurs liability on account of the consignment, by which he acquires a special property therein, then the factor has the right to sell so much of the consignment as may be necessary to reimburse advances or meet liabilities, unless there is some existing agreement between himself and the consignor which controls or varies this right. Thus, for example, if contemporaneous with the consignment and advances or liabilities there are orders given by the consignors, which are assented to by the factor, that the goods shall not be sold until a fixed time, in such a case the consignment is presumed to be received by the factor subject to the orders; and he is not at liberty to sell the goods to reimburse his advances or liabilities until after that time has elapsed. The same rule will apply to orders not to sell below a fixed price, unless, indeed, the consignor shall, after due notice and request, refuse to provide any other means to reimburse the factors. And in no case will the factor be at liberty to sell the consignment contrary to the orders of the consignor, although he has made advances or incurred liabilities thereon, if the consignor stands ready and offers to reimburse and discharge such advances and liabilities. On the other hand, where the consignment is made generally, without any specific orders as to the time or mode of sale, and the factor makes advances or incurs liabilities on the footing of such consignment, there the legal presumption is that the factor is intended to be clothed with the ordinary rights of factors to sell, in the exercise of a sound discretion, at such time and in such a mode as the usage of trade and his general duty require, and to reimburse himself for his advances and liabilities out of the proceeds of the sale; and the consignor has no right by any subsequent orders, given after advances have been made or liabilities incurred by the factor, to suspend or control this right of sale, except so far as respects the surplus of the consignment, not necessary for the reimbursement of such advancements or

liabilities." But, owing to present facilities for quick communication, it may well be said that the rule concerning the right to sell in order to satisfy advances, etc., is too strongly stated in that case. The interest of the principal in the property, the relationship of the parties as principal and agent, and the nature of the transaction are such that subsequent directions should be obeyed, and the goods not sold in disregard of these until the principal has been afforded a reasonable opportunity to discharge the factor's lien, unless an immediate sale be necessary to save the lien from loss. It was so held in *Marfield v. Goodhue,* 3 N. Y. 62. See, also, *Hilton v. Vanderbilt,* 82 N. Y. 591. The same principle was recognized in *Phillips v. Scott,* 43 Mo. 86 (97 Am. Dec. 369), where it was said that on a sale, if necessary to avoid loss, the factor's discretion might not be controlled. See, also, *Howard v. Smith,* 56 Mo. 316. Hence, as said on the former hearing, "The produce company had no right to sell after learning of the sale to Walker unless found necessary to the enforcement of its lien." No claim was made that the sale was necessary to protect the company, and the evidence is conclusive that such was not its purpose. No subsequent instructions had been given, and the issue with respect to necessity of notice, save of the sale to plaintiff, ought not to have been submitted to the jury.

IV. In view of another trial, some other matters ought to be disposed of. This is not an action for conversion, but for the possession of the property; and, even though all the defendants may have participated in the conversion of the apples, only those in possession when the suit was brought can be held liable for their return. If Cartigney was in the sole and exclusive possession of the apples, the jury ought to have been allowed to find in favor of the other defendants. Whether he was in such possession, or exercised control over them in connection with the produce company, was an issue proper for the jury's determination. The evidence showed that Muntz neither had nor claimed any interest in the ap-

ples, and acted throughout in the capacity of the manager of the company to which the apples had been shipped, and in whose possession they continued at least till sold to Cartigney. The motion to direct the verdict in his favor should have been sustained. Shinn, Replevin, section 70. Again, if the lien for advances and charges was waived, the plaintiff was entitled to recover the possession of the apples, or their value, without deduction of the amount of the advances and charges, which in that event constituted but a naked debt of Scott to the company. If such a lien was not waived the defendants had the right to retain the possession of the apples, and the produce company would only be liable in a proper action for any balance which remained in its hands, or should have remained, after a prudent disposal of the property. The objections to the fourteenth instruction may be obviated on another trial, and it is suggested that the precise issues be stated to the jury, instead of devoting 10 of the instructions to a substantial repetition of the pleadings.

The point made by appellee concerning motions to direct verdict is disposed of in *German Sav. Bank v. Bates Addition Imp. Co.,* 111 Iowa, 432.—REVERSED.