## LANE v. ROMER, for the use of CUNNINGHAM.

1. SALE—WARRANTY OF TITLE—BREACH OF SAME.—A sale of chattels for a sound price carries with it an implied warranty of title in the vendor, and the vendee may pay any sum he deems necessary to clear the vendor's title, and obtain possession; and he may show such payment as a set-off to a suit against him for the purchase money, or maintain a suit against the vendor for the amount as for money paid to his use.

2. SAME.—R. sold his stock in trade to L., taking a non-negotiable note for the price in the name of his wife.    At the time of the sale, the prop-

Lane vs. Romer.

erty had been mortgaged by R. to secure his debts, and the mortgages were on file. L. paid off the mortgages to save the property, it having been subsequently seized by the mortgagees. *Held*, in an action by Mrs. R. on the note, that the sum so paid by L. in discharge of the mortgages, being actually due thereon, was a valid set-off against the note.

(2 *Chand.* 61.)

ERROR to the Circuit Court for *Milwaukee* County.

This was an action brought by *Romer*, the plaintiff below, for the use of *Cunningham*, against *Lane*, the defendant below, upon a promissory note made by him, payable to *Mrs. Romer*, dated September 1, 1846, for $100, and *not negotiable*. The defendant pleaded the general issue, and gave a general notice of set-off.

At the trial the note was read in evidence, and in defense the defendant, *Lane*, proved that on the day of the date of the note he purchased of *Romer* the cabinet furniture in his shop in the city of Milwaukee, and gave him therefor $100 and the note; that he afterwards paid on the note $35, and that the furniture did not exceed in value $200, and in the opinion of witness was not worth that.

The defendant then offered to prove that at and previous to the sale, there were three chattel mortgages duly recorded or filed in the office of the clerk of the common council of the city of Milwaukee, where *Romer* resided at the time of their execution, which were executed by *Romer* to one Lyman P. Swift, upon the identical furniture sold by *Romer* to *Lane;* that Swift, a few days after the sale, by virtue of the mortgages, took possession of the furniture, and that then *Lane* paid Swift $100 in satisfaction of the mortgages, and that the said sum of $100 was then due and unpaid on said mortgages, and the notes in their conditions mentioned. The court refused to permit the testimony to be given, and *Lane* excepted. The question here is: did the court err in refusing such testimony?

*J. Downer*, for plaintiff in error, argued, 1. The testimony, if admitted, would have proved a *payment* of the note sued

on. It is a general principle of law that when one person owes a debt which is a lien on another's property, and the latter, either to retain or obtain possession of his property, pays such debt, that such payment (being for the benefit of the person who is personally liable) is, *by operation of law*, a payment *pro tanto* to him of any demand which he might have against the party so paying, that *originated in, or is connected with*, the property sold on which such lien existed.

The case of *Partridge v. D. College*, 5 N. H. 288, and the authorities there cited, sustain the principle above stated. That was an action for the purchase money of lumber, on which one Olcott had a lien for sawing, and he refused to deliver the lumber to the vendee until the amount of his lien, $261, was paid. The vendee paid Olcott the $261, and when sued by the vendor for the purchase money, paid into the court all but the $261, and claimed the payment of that amount to Olcott as a payment to the vendor. The court say :

" The payment which the defendants made to Olcott cannot be considered a voluntary payment, but was a payment they were compelled to make in order to obtain the boards ; and we are of opinion that it must be considered as a part payment to the plaintiff of the price of the boards (*Carter v. Carter*, 5 Bing. 406 ; *Taylor v. Zamira*, 6 Taunt. 524 ; *Stubbs v. Parsons*, 3 Barn. & Ald. 516 ; *Andrew v. Hancock*, 1 Barn. & B. 37 ; *Sapsford v. Fletcher*, 4 Durn. & E. 511"), and gave judgment for the defendants.

In the present case, the note sued on being given for part· of the purchase money of the identical property mortgaged, and the money being paid by *Lane* to Swift to discharge the mortgage lien, such payment was, according to the above authorities, payment *pro tanto* to *Romer*.

2. The amount paid to discharge the mortgages might have been proved as a set-off, being specially set out in the notice, and the testimony offered and ruled out was competent for that purpose. *Indebitatus assumpsit* would lie by

*Lane* against *Romer* for the money paid to remove the incumbrance of the mortgages. *Wells v. Porter*, 7 Wend. 120 ; and when *indebitatus assumpsit* will lie on a demand, it may be pleaded as a set-off. U. S. Dig., Set-off, 197 ; Sup. U. S. Dig., Set-off, 40.

In the case of *Sheldon v. Simonds*, Wright, 724 (U. S. Dig., Set-off, 43), it was decided that where one buys land and gives his note, and an incumbrance is afterwards discovered, he may pay off the incumbrance, and set it off on the note. We see no reason why the same principle would not apply to a sale of chattels, especially as there is an *implied warranty of title* in all sales of chattels. *Defreeze v. Trumper*, 1 Johns. 274 ; Story on Cont., § 535.

The fact that *Lane* paid the full value of the furniture rebuts any presumption that he had any knowledge of the mortgages at the time he purchased the furniture, or that he took it subject to them.

3. The consideration of the note entirely failed, for if *Lane* purchased the goods of *Romer* for $200, and paid him one-half, and gave the note for the other, and afterwards the consideration failed to the extent of $100, that to that part of the consideration which has not failed the money paid must apply ; and, if so, the consideration of the note entirely failed, and evidence thereof might have been given under the general issue, and the court erred in rejecting such evidence. U. S. Dig., 1847, Promissory Note, 142, 143.

*A. Hyatt Smith*, for defendant in error, argued, 1. That, for aught that appears in the case, the plaintiff in error, at the time of the purchase of the property in question, knew of the existence of the mortgages executed by the defendant to Swift, and that they were liens upon it ; that the presumption arising from the evidence given in the case fairly was, that he had such knowledge ; but if not, still the mortgages were recorded or on file with the proper officer, and that, in law, made evidence of the fact, of which he was bound to take

notice. *Frost v. Beekman*, 1 Johns. Ch. 288 ; *Parkhurst v. Alexander*, id.

2. The law being, that all incumbrances of record, upon property sold, were notice to the purchaser, and of which he was bound to take notice ; and it not appearing that any representations were made by the vendor that the property was not incumbered, there was no fraud in law, and the plaintiff in error took no precedence by the purchase over the mortgage incumbrancer.

3. That there being an incumbrance upon the property, within the knowledge of the purchaser, he took it subject to all such liens as respects which he was charged in the law with knowledge, and that the implication would necessarily arise that he made the purchase subject to such liens. 6 Paige, 189.

HUBBELL, J.   A sale of chattels for a sound price carries with it an implied warranty of title in the vendor.   This is old law.   *Chandelor v. Lopus*, 2 Croke, 2 ; *Seixas v. Woods*, 2 Caines, 48.   And to this extent the rule of *caveat emptor* does not apply in sales of personal property.   The rule is different in respect to real property, where a warranty must be expressed or the courts hold that none was intended.   Subject to this rule, *Romer* sold his stock in trade in the cabinet shop to *Lane ;* and the first question is, whether the vendee is protected from the chattel mortgages upon the property, executed by the vendor prior to sale, and recorded in conformity to the statute.   Clearly, *Romer* had not a perfect title at the time he sold, and inasmuch as the record notice only affected third persons, and did not apply between the parties, *Romer* was bound, as between himself and *Lane*, to make good the title.   This suit is brought upon a note, not negotiable, given for a part of the purchase money, and the same right of defense exists as if *Romer* owned the note.

Had the defense arisen upon a notice of special matter, accompanying the plea of general issue, I should have had

little doubt of the defendant's right to *recoup* to the amount of the chattel mortgages; nor do I doubt that an action would lie on the implied warranty; but there is no notice whatever of the facts which make out this defense. The defendant pleaded the general issue, with the common notice of set-off, and, on the trial, offered proof of payment of the mortgages as a *set-off* to the plaintiff's demand on the note. This proof I then deemed inadmissible and ruled it out.

The defendant also offered to show *payment* of the note by proving payment of the mortgages, which was also ruled out.

The principle set up is, that the vendee of a chattel, under his *implied* warranty from the vendor, may pay any sum he deems necessary to clear the vendor's title, and afterwards not only show such payment as a set-off in a suit for the purchase money, but bring assumpsit against the vendor for money paid and advanced for his use; for assumpsit will lie, *e converso*, where a set-off is maintainable. On a careful examination of the authorities, a majority of my brethren are disposed to hold the ruling in the court below erroneous on both points. *Carter v. Carter*, 5 Bing. 406, is a case similar in principle. It was a payment, by the tenant, of ground rent due by the landlord, after demand upon the latter and his neglect to pay. The tenant paid, to avoid a distress upon his property on the premises, and was allowed to set it up as a payment of rent to the landlord. The peculiar condition and liability of tenants at common law may, however, have induced this and like decisions. *Partridge v. Dartmouth College*, 5 N. H. 288, is a case more in point. The defendants were vendees of a quantity of lumber, in possession of one Olcott, who had a lien on it for sawing. Being unable to obtain possession of the lumber without satisfying the lien, they paid the amount due to Olcott, and afterwards, in a suit by the vendor, were allowed to show it as a payment of the purchase money. The court say: "The payment which the defendants made to Olcott cannot be considered a voluntary payment, but was a payment

they were compelled to make in order to obtain the boards; and we are of opinion that it must be considered as a part payment to the plaintiff of the price of the boards." And they cite *Carter v. Carter*, 5 Bing. 406 ; *Taylor v. Zamira*, 6 Taunt. 524 ; *Stubbs v. Parsons*, 3 B. & A. 516 ; *Andrews v. Handcock*, 1 B. & B. 37 ; *Sapsford v. Fletcher*, 4 D. & E. 511 ; all cases between landlords and tenants.

After all, the learned court of New Hampshire is the only one which has sustained a case anywhere nearly like the present, and the fact that the possession could not be obtained without satisfying the lien gives it a shade of difference. *Wells v. Porter*, 7 Wend. 119, cited by the defendant's counsel, does not sustain the principle.

The payment by one partner, or by one tenant in common, of a sum necessary to protect the property in which they have a joint interest, is quite different from paying on an assumed or implied warranty ; but authority must govern, and I cheerfully yield my own views to those of my brethren.

Judgment reversed, with costs.