EDGERTON and another, Respondents, vs. MICHELS and another, Appellants.

*February 8 — May 15, 1886.*

*Factors: Sale of stolen chattels: Implied warranty of title: Court and jury.*

1. One who sells goods for another for a commission, having the goods in his possession at the time, and giving credit to the vendee, is a factor.
2. The general rule in this country is that where there is a sale of chattels in the vendor's possession at the time, at a fair price, there is always an implied warranty of title, unless the facts and circumstances are such as to warrant a different conclusion.
3. Upon the evidence in this case it is *held* that the questions whether the plaintiffs acted as factors in the sale of certain cattle which had been stolen by their principal, and whether there was an implied warranty of title upon such sale, should have been submitted to the jury.

APPEAL from the Circuit Court for *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The complaint alleges in effect that, at the times mentioned therein, the plaintiffs were copartners, doing business as such "under the firm name of Edgerton & Brown, *as factors* and brokers of cattle and live stock, at the city of Milwaukee;" that during the same time the defendants were copartners, doing business as buyers and sellers of cattle and live stock at Milwaukee under the firm name of Michels Bros.; that the defendants were indebted to the plaintiffs upon the sale and delivery to them of thirty-two head of cattle at an agreed price in the sum of $814.50, for which they demand judgment with costs. The defendants, admitting the plaintiffs' claim, counterclaimed by alleging, in effect, that September 25, 1884, the plaintiffs sold and delivered to them twenty-five head of other cattle at the

agreed price of $641.78, which amount the defendants paid
to the plaintiffs at the time; that at the time of such sale
and delivery the plaintiffs were not the owners of said
twenty-five head of cattle, and had no right to sell or de-
liver the same, for the reason that said cattle then belonged
to other parties from whom they had been stolen, which
fact was unknown to the defendants at the time of their
purchasing and paying for them; that after the sale and
after the cattle had been shipped to Chicago the owner of
twenty-two head of the cattle reclaimed the same from the
defendants, who necessarily were put to $40 expense after
the purchase, which sum, together with the amount they
had paid the plaintiffs, they had demanded from them; that
the defendants tendered to the plaintiffs the difference in
their respective claims, and brought the same into court,
and prayed that the amount of the defendants' claim be set
off against the claim of the plaintiffs, and asked judgment
for costs.   By way of reply the plaintiffs deny that they
sold and delivered the cattle to the defendants, or had any-
thing to do with the sale or delivery except, they alleged,
in effect, that one James Sherman *alias* had such cattle in
his possession at the stock-yards, claiming to be the owner
thereof, and in the presence of the defendants requested the
plaintiffs to negotiate the sale of the cattle, which they ac-
cordingly did, to the defendants; that the defendants there-
upon took possession of the cattle, and paid the price therefor
to the plaintiffs; that in such transaction the plaintiffs simply
acted as the agents and brokers of said Sherman *alias*, and
that they paid the money over to him in good faith, sup-
posing him to be the owner; that they had no knowledge
or suspicion at the time of the sale that the cattle had been
stolen, or did not belong to Sherman *alias*.

On the trial it was established by undisputed evidence
that twenty-two head of the cattle mentioned in the counter-
claim of the defendants had been stolen from Mr. Cavano

by one Ry. Eddy, *alias* James Sherman, and that, after
their sale to the defendants and shipment by them to Chi-
cago, they were there reclaimed by Cavano.    It is also un-
disputed that Eddy drove the cattle to the stock-yards in
Milwaukee September 25, 1884, about 5 o'clock P. M.; that
neither the plaintiffs nor the defendants had any knowledge
or information that any of the cattle had been stolen, until
several days after the sale to the defendants, nor until after
the defendants had shipped them to Chicago; that the firm
of the plaintiffs and the firm of the defendants each had
an office at the stock-yards; that the defendant *Julius
Michels* and the plaintiff *Brown* first saw the cattle in the
alley running through the stock-yards about the same time;
that Eddy came out and the cattle went into the pen; that
*Michels* asked Eddy, "Are these your cattle?" and he an-
swered, "Yes;" that *Brown* then asked Eddy, "Who are
selling your cattle?" and he answered, "Nobody;" that
*Brown* then told Eddy who he was and his business; that
*Brown* then asked Eddy if he had turned over his cattle to
any one to sell; that Eddy told him he had not; and there-
upon turned them over to the plaintiffs to sell; that there-
upon *Brown* and *Michels* negotiated for the sale of the
cattle to the defendants in the presence of Eddy, and after
a while agreed upon prices to which Eddy assented.    The
cattle were then, on that same afternoon, driven upon the
scales and weighed by the weigh-master for the plaintiffs,
and he charged them for the weighing and half yardage,
and immediately delivered to the plaintiffs a ticket dated
September 25, 1884, signed by the weigh-master, reciting,
"This ticket must be presented to the cashier C., M. & St.
P. Ry. stock-yards," with the initials of the plaintiffs' firm,
the initials of *Julius Michels*, and giving the number, price,
and weight of the cattle in three several lots, and stating:
"All stock is held subject to freight and charges 160."    At
the head of this *ticket* there was subsequently written in

pencil " James Sherman, Hart Prairie," in the handwriting of one of the plaintiffs. Immediately on the cattle being weighed on the evening of September 25, 1884, the plaintiffs paid Eddy the amount they came to at the prices named, in currency, less $3.13 yardage and $6 commissions charged by them, making the amount paid him $632.65, when Eddy disappeared. September 27, 1884, the defendants received from the plaintiffs the ticket mentioned, and paid them for the cattle by way of check $641.78. Thereupon the cattle, which in the mean time had remained in said stock-yards, were shipped to Chicago, where they were reclaimed. The defendants also offered in evidence " receipt for deposit with the clerk of $161.82," being the difference in the claims said to have been tendered to the plaintiffs.

At the close of the trial the court in effect directed the jury to find against the defendants on their counterclaim, and in favor of the plaintiffs for $834.50, which was done accordingly; and from the judgment entered thereon the defendants appeal.

For the appellants there was a brief by *Markham & Noyes*, and oral argument by *Mr. Noyes*. They argued, among other things, that the defendants having been dispossessed of the cattle by the true owner, an action will lie against the party selling to them. *Burt v. Dewey*, 40 N. Y. 283; *Hoffman v. Carow*, 22 Wend. 285–319. The plaintiffs were factors, and hence liable to be sued as principals. Story on Agency, secs. 401, 401a; *Price v. Wis. M. & F. Ins. Co.* 43 Wis. 267; *Hoffman v. Carow*, 22 Wend. 319, 320; *S. C.* 20 id. 21; *Williams v. Merle*, 11 id. 80; R. S. sec. 3346; *McGraft v. Rugee*, 60 Wis. 409. The transaction was reduced to writing, and the written instrument designates the plaintiffs as sellers and principals. *North v. Henneberry*, 44 Wis. 306–317; *Weston v. McMillan*, 42 id. 567–70; *Saveland v. Green*, 40 id. 431; *Nash v. Towne*, 5 Wall. 702–3; Story on Agency, sec. 269. The defendants gave

credit to the plaintiffs exclusively, and the latter were therefore liable even though their supposed principal was known and stood by. Story on Agency, secs. 291, 447–8; *Meeker v. Claghorn*, 44 N. Y. 351. The question as to whom the credit was given to, was for the jury. Story on Agency, sec. 279; Field's Lawyers Briefs, sec. 216; *McCurdy v. Rogers*, 21 Wis. 197; *Fredendall v. Taylor*, 23 id. 538–41; *S. C.* 26 id. 286. If the plaintiffs were liable, as factors of the thief, to the true owner for a conversion of the property, they would be liable to the purchaser. The plaintiffs in this case did exercise dominion over the cattle and did sell them. But even if they were simply present directing or assisting at the sale, or in any manner aided in the unlawful act, they were liable to the owner for conversion. *McPartland v. Read*, 11 Allen, 231; *Edgerly v. Whalan*, 106 Mass. 307; *Moore v. Eldred*, 42 Vt. 13; *Hoffman v. Carow*, 20 Wend. 21; *Williams v. Merle*, 11 id. 80; *Boyce v. Brockway*, 31 N. Y. 493; *Spooner v. Holmes*, 102 Mass. 503; *Bassett v. Spofford*, 45 N. Y. 387; *Newton v. Porter*, 69 id. 133; Cooley on Torts, 451–2; Ewell's Evans' Agency, 329–389. A sale of chattels in the vendor's possession implies a warranty of title. *Shattuck v. Green*, 104 Mass. 45; *Burt v. Dewey*, 40 N. Y. 283; *Bordwell v. Collie*, 45 id. 494; Abbott's Tr. Ev. 347.

For the respondents there was a brief by *Jenkins, Winkler, Fish & Smith*, of counsel, and oral argument by *Mr. Fish*. They contended, *inter alia*, that the plaintiffs acted solely as agents of a disclosed principal. In such cases an agent is not liable unless he agrees to be so. 2 Addison on Con. sec. 614; 1 Chitty on Con. 308; 1 Wait's Act. & Def. 256; *Whitney v. Wyman*, 101 U. S. 392; *Ex parte Hartop*, 12 Ves. Jr. 349, 352. At the time of the sale the cattle were in the possession of a third person, which was known to the defendants. In such cases there is no implied warranty unless the agent sells the property as his own. *McCoy v.*

*Artcher*, 3 Barb. 323; *Edick v. Crimm*, 10 id. 445; *Scranton v. Clark*, 39 N. Y. 220; *Harris v. Lynn*, 25 Kan. 281; *Sheppard v. Earles*, 13 Hun, 651; 2 Benj. on Sales, 841, n. 21; 2 Kent's Comm. 478; 3 Wait's Act. & Def. 529.

The following opinion was filed February 23, 1886:

CASSODAY, J.   Upon the facts stated was the court justified in directing a verdict against the defendants on their counterclaim, and in favor of the plaintiffs for the full amount of their claim? The cattle had been stolen by Eddy, *alias* Sherman, prior to the sale to the defendants, and that fact was unknown to both parties until after the plaintiffs had paid Eddy, and the defendants had paid the plaintiffs, and the cattle had been shipped to Chicago, where they were reclaimed by the true owner. The plaintiffs contend that they were mere middle-men, brokers, or agents for Eddy, who was present, to the knowledge of the defendants, during the negotiations, and assented to the price agreed upon; and hence that they are not liable upon an implied warranty of title. The defendants insist that the plaintiffs took the cattle from Eddy into their own possession, negotiated the sale to them in their own name, procured the weighing and yarding of the cattle and the weigh-master's ticket for the same, advanced to Eddy the full price the defendants agreed to give, less the yardage and their commissions, when Eddy disappeared, and then that the plaintiffs retained the cattle until two days afterwards, when they delivered the ticket to the defendants and received from them the full contract price; and that these things taken together made the plaintiffs factors or commission men for the sale of the cattle. We think the evidence was sufficient to have justified the jury in finding the facts as claimed by the defendants. Upon such facts were the plaintiffs in the transaction factors, commission men, or mere middle-men — brokers — agents?

An agent employed to sell personal property intrusted to his possession by or for his principal, for a compensation commonly called factorage or commission, is a factor. As such he may sell on credit unless contrary to instructions or custom. He may sell for his principal in his own name, and then sue in his own name for the price. He is intrusted with the possession, management, control, and disposal of the goods to be sold, and has a special property in them and a lien upon them. He may retain possession until his advances, expenses, and commissions are paid. 1 Story on Agency, §§ 33, 34a, 110–113; *Price v. Wis. M. & F. Ins. Co.* 43 Wis. 276, 277; *McGraft v. Rugee*, 60 Wis. 409, and cases there cited; 58 Am. Dec. 159–171.

On the other hand, a broker is an agent, employed to make bargains and contracts between other persons, in matters of trade, commerce, or navigation, for a compensation commonly called brokerage. He is not authorized to buy or to sell property in his own name, but only in the name of his principal. He is not intrusted with the custody or possession of the property bought or sold, and consequently has no special property or lien upon it. He is strictly, therefore, a middle-man, or intermediate negotiator between the parties. Ordinarily he has no authority merely by virtue of his agency to receive payment for property sold by him. Story on Agency, §§ 28, 34, 109; *Price v. Wis. M. & F. Ins. Co., supra.*

We are clearly of the opinion that the evidence given upon the trial would have justified the jury in finding that in the transaction in question the plaintiffs acted as factors, and not merely as brokers or middle-men. Treating them as factors, as we must on this appeal, they must be held to all the responsibilities of factors selling property in their own name for a disclosed principal. The fact that the plaintiffs fully paid Eddy for the cattle some considerable time prior to delivering the weigh-master's ticket to the de-

fendants and receiving from them pay for the cattle, makes the case partake very much of a purchase by the plaintiffs, and then a resale by them to the defendants. It is well settled in this country that the sale of chattels acquired from one who had stolen them passes no title even to an honest purchaser, and the true owner may maintain an action for the property without any previous demand. *Dame v. Baldwin*, 8 Mass. 518; *Heckle v. Lurvey*, 101 Mass. 345; *Hoffman v. Carow*, 22 Wend. 285. The same is true of chattels sold by one who is not the owner and has no authority to sell. *Coombs v. Gorden*, 59 Me. 111; *Bryant v. Whitcher*, 52 N. H. 158; *Gilmore v. Newton*, 9 Allen, 171; *Quinn v. Davis*, 78 Pa. St. 15; *Ventress v. Smith*, 10 Pet. 161; *Black v. Jones*, 64 N. C. 318; *Fawcett v. Osborn*, 32 Ill. 411; *Wheelwright v. Depeyster*, 1 Johns. 471.

The question whether an implied warranty of title attached to the sale from the plaintiffs to the defendants does not seem to be definitely and conclusively settled as a matter of law. Undoubtedly, the civil law annexed such a warranty on the part of the vendor to every sale of a chattel. The earlier English cases indicated a contrary doctrine. *Morley v. Attenborough*, 3 Exch. 500. The later English cases indicate that such a warranty may be inferred from the mere fact of sale under certain circumstances. Thus in *Eichholz v. Bannister*, 112 E. C. L. (17 C. B. N. S.) 708, it was held: "In the case of goods sold in an open shop or warehouse, there is an implied warranty on the part of the seller that he is the owner of the goods; and if it turns out otherwise, as where the goods are claimed by the true owner from whom they have been stolen, the buyer may recover back the price as money paid upon a consideration which has failed." The general rule in this country undoubtedly is that where there is a sale of chattels in the vendor's possession at the time, at a fair price, there is always an implied warranty of title, unless the facts and circumstances are

such as to warrant a different conclusion. For discussions of the question and authorities bearing upon it, see *Lane v. Romer*, 2 Pin. 404; *Costigan v. Hawkins*, 22 Wis. 74; *Shattuck v. Green*, 104 Mass. 42; *Patee v. Pelton*, 48 Vt. 182; *People's Bank v. Kurtz*, 99 Pa. St. 344; 2 Schouler on Pers. Prop. §§ 375–379; 2 Benj. Sales, §§ 948–964; *Scott v. Hix*, 62 Am. Dec. 458 and notes, 460–468; *Fawcett v. Osborn*, *supra; Burt v. Dewey*, 40 N. Y. 283; *Defreeze v. Trumper*, 1 Johns. 274; 22 Am. Law Reg. 85.

The case was not submitted to the jury at all, and, of course, was not determined upon the theory indicated. There certainly is no conclusive presumption of law in a case like this, but rather a mixed question of law and fact. As the case now stands, we refrain from any further discussion.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

A motion for a rehearing was made by the respondents. The following opinion was filed May 15, 1886:

CASSODAY, J. It appears that in the opinion filed the writer was mistaken in saying that the plaintiffs retained the possession of the cattle for two days after the sale. It was an unwarrantable inference from certain expressions in the testimony without noticing others. Still it is true that payment was not made until two days after the sale. This being so, the purchase was manifestly upon credit. Who gave the credit? Certainly not Eddy *alias* Sherman. He exacted his money and got it from the plaintiffs. The plaintiffs gave the credit. It could be given by no one else, under the testimony. There is, then, evidence tending to show that the plaintiffs had possession of the cattle at the time of sale, and sold them to the defendants upon credit for a commission. Those things were sufficient to

constitute the plaintiffs factors, within the definition given in the opinion. Whether they retained possession thereafter is immaterial.

*By the Court.*— The motion for a rehearing is denied.

See note to this case in 25 Am. Law Reg. 260, 263.— REP.