Bissell, J.,
delivered the opinion of the court.
In 1889, the Colorado Soap Company was a corporation manufacturing soap in the city of Denver. In the early part of that year Cook & Davis were grocers doing business in the town of Trinidad. Subsequently there were some changes in the personnel of that firm, and probably whatever interest the firm had in the stock passed to other parties before the transactions which will be stated. The details are unimportant, since the decision will be rested upon no consideration of any of these matters. The whole case turns upon the nature of the transaction between the company and Cook & Davis and the legal consequences which attach to it. The court found that the goods which are the subject of this action were sold by the company to Cook & Davis. It is impossible to treat that finding as one of fact, in any *90 such sense as to make it absolutely obligatory upon this tribunal. It is thus stated, but it is evidently more a conclusion of law than a determination of what the fact was, since the evidence on the subject is not a. matter of controversy. There were no witnesses who testified to the matter except the manager of the company and Davis, and they are in entire harmony as to what occurred. In our judgment, it is a naked legal question whether what was done constituted a sale, or whether the title remained in the company, and Cook & Davis were constituted factors for the purpose of disposing of the goods. Cook & Davis had evidently for some time been customers- of the soap company. Early in 1888 they had bought of them some cases of what is known to the trade as “ Reverence ” soap. At the time of the purchase, Balcom, who was the manager of the company, tried to induce the firm to buy 150 additional cases of the same brand. The original negotiations fell through, but Davis came to Denver, when Balcom renewed his efforts to sell the stock to the firm. Davis refused to buy, but the parties finally came to an agreement about it. It was agreed that the company should ship Davis the 150 cases 'and he would attempt to sell it. If he succeeded, then he should account to the company to the amount of his sales at the rate of $3.25 per case. Balcom represented that the company was in close quarters financially,- and needed a good deal of money. He wanted to draw for the goods sold, and also for this 150 cases at ninety days, with the understanding that the draft was to be accepted for the accommodation of the company, and on its maturity should be paid as to the goods then purchased, and to the extent of any sales which might then have been made out of this additional lot of goods. Davis agreed to it. The proper entry was made on the books of the company to show the character of the transaction, the draft was drawn and accepted, and on maturity sent through the bank for collection. When it was presented the concern paid it to the amount of their purchases, but declined to pay that part of the draft which represented the 150 cases of soap. The draft *91 was returned and again sent to Trinidad. It was thereupon endorsed by Davis with a memorandum that the goods were shipped on consignment and nothing had been realized. This explanation was accepted by the company, and nothing further was done about the draft. When the goods came to Trinidad they were not mingled with the general purchases of the firm. Davis, who seems to have succeeded to the co-partnership interests, became subsequently embarrassed, and divers suits were commenced against him by his other creditors. Writs of attachment were issued to aid in the collection of the claims, and these goods were seized by Burns, the sheriff of Las Animas county. The present suit in replevin was commenced against him by The Colorado Soap Company, and he defended, alleging title in Davis. On the trial the foregoing facts appeared, the court found against the company, and adjudged the title to have been in Davis at the time of the service of the writs. This judgment was clearly wrong.
In the absence of equitable considerations, or the intervention of rights which, under other and well recognized rules, are entitled to protection as against one who has put property into the possession of his agent or representative for the purposes of disposition, the law will never affix to a transaction any other character than that which the parties evidently intended to give it. Plainly a sale was not contemplated between the company and Davis. They assumed to each other no such relation as that held by vendor and vendee, and the title to the goods which were put in the possession of Davis cannot be taken to have passed from the company, unless there are other reasons than those growing out of the transaction itself which require that the rights of the attaching creditors shall be protected. Warner v. Martin, 11 How. 209; Burton et al. v. Goodspeed, 69 Ill. 237; Loomis et al. v. Barker, 69 Ill. 360; Edgerton et al. v. Michels et al., 66 Wis. 124.
There are no such considerations in this case. The creditors are without any equitable rights, and have no other *92 claim to the protection of the court than that which ordinarily results from the seizure of property belonging to a third person. If goods are taken which are not the property of the defendant in the writ, they cannot be held to answer his debts; he must either have title, or from some other sufficient legal reason the goods must be subject to the lien of the creditors. There is in this case an entire absence of any fact which would affect the title of the company, and the goods must be held to be exempt from any liability to seizure for Davis’s obligations.
For the error committed by the court in holding as a matter of law upon the evidence that the transaction between the parties constituted a sale, the judgment in this case must be reversed and the cause remanded.

Reversed.