HENRY FISHBACK, Appellant, *v.* ELISHA BROWN, Appellee.

## APPEAL FROM MACOUPIN.

The principal is accountable for the acts of his agent, and a party who exchanges money for an agent, supposing him to be acting as principal, may proceed against either the agent or principal, if he afterwards discovers the fact that such party was agent for another.

THIS cause was heard before WOODSON, Judge, and a jury, at December term, 1854, of the Macoupin Circuit Court. The suit was commenced before a justice of the peace, and taken by appeal to the Circuit Court.

J. M. PALMER, for Appellant.

WIER, for Appellee.

CATON, J. Fishback sued Brown upon an account for twenty-nine dollars and nine cents, which Brown admitted to be correct, but claimed as a set-off the amount of a fifty dollar counterfeit bill which he had received of Fishback, and asked for a judgment for the balance. The jury found a verdict for

the defendant for the balance due, upon allowing him the fifty dollars for the counterfeit bill, which verdict was approved by the circuit court, upon a motion for a new trial, and the only question presented is whether the evidence justified the jury in their finding, that Brown received the counterfeit bill of Fishback, or his agent acting for him. The proof is this : Fishback had a store in Verden, in which English was his clerk. Gibson was in the same store, attending to the business of Brown, whose agent he was. A boy came into the store and purchased goods, which amounted to less than fifty dollars, and offered the bill in payment to English, the clerk, who could not change it. It was proposed to go to Brown, who was absent one hundred yards distant, and get him to change it, but it was objected that he had refused to change bills before, whereupon Gibson directed the clerk to go to Brown, and tell him to send him the change in small bills, according to the testimony of two witnesses, while Gibson denies that he gave any such direction. English, the plaintiff's clerk, went to Brown and gave him the fifty dollar bill, and got a package of money in exchange, with directions from Brown to have Gibson count it. With the package of money he returned to the store and gave it to Gibson, with the direction of Brown that he should count it. He did so, and found the package to contain fifty-one dollars, of which he retained one dollar, and pushed the fifty dollars, in small bills, along the counter towards the boy, who commenced counting out the money; but being unable to do it, McKee, another clerk of Fishback's, took the money and counted out the boy's change and gave it him, and retained the price of the goods for Fishback. Were the jury authorized, from this evidence, to find that Brown changed the money for Fishback ? We think that they were not only authorized, but that they were required so to find. His agent had sold the goods to the boy and taken from him the bill for the purpose of making the change, and taking from it the price of the goods for his benefit. When he took the bill from the boy, he took it as the plaintiff's agent, in the regular course of his business, and as such agent he held it. It was the plaintiff's business to make the change, supposing the bill was good, or to lose the sale of his goods. It is true, that English represented to Brown that he wanted it changed, not for the plaintiff, but for Gibson, Brown's own agent ; and it may be true that Gibson told him to do so, but that misrepresentation did not change the character of the transaction or the truth of the case. Whatever Gibson did in the matter was not on his own account, nor on account of Brown, in whose employ he was, but for the benefit of the plaintiff alone. Sup-

pose Brown had changed the bill at the request of English, in total ignorance of his employment, and supposing that it was on account of English alone, he would still have the right to go upon the principal when he learned the fact of the agency, although in such a case he might also have a remedy against the agent. Suppose a stranger had received at the counter a counterfeit bill of English, under the belief that he was the owner of the store, would it be contended that such mistake of the agent for the principal would absolve the latter from his responsibility for the acts of the former performed in pursuance of his agency? Gibson had no use for the money, either for his own business or that of Brown, but he interfered solely for the benefit of the plaintiff. He made the suggestion to the plaintiff's agent to advance the plaintiff's business, and the agent in prosecuting that business, adopted and acted upon that suggestion. Nor is there any pretense for saying that English took the bill to Brown as the agent of the boy. The boy never sent him to Brown to get the bill changed; he gave English the bill for him to change, and with no express or implied request that he would get another to change it. The simple question is, for whom was English acting—whose representative, in fact, was he when he procured Brown to change the bill? Upon this question there was no room for the jury to doubt. Had the verdict found this fact the other way, we should have been forced to the conclusion that they had entirely mistaken the evidence, or had misunderstood the law as applicable to the evidence. The judgment must be affirmed.

*Judgment affirmed.*