ANDREW BURTON *et al.*

*v.*

STEPHEN GOODSPEED *et al.*

1. PARTNERSHIP—*share in profits, when part of compensation, does not create.* The fact that a party selling goods, etc., is to receive a portion of the net profits on sales, does not make him a partner with the owner, if they are given merely as a part of his compensation.

2. FACTOR—*what constitutes one a factor or commission merchant.* A party agreeing with the owners to receive coal shipped to him for sale, and hoist from the vessel, and put the same on the dock, pay the lake

| 69 | 237 |
| 94a | ⁴449 |
| 69 | 237 |
| 108a | ¹153 |
| 69 | 237 |
| 209 | ¹385 |
| 69 | 237 |
| 213 | 586 |

freight, and charge the cost of hoisting and putting the coal on the dock, and the lake freight paid by him, against the coal, and who is to receive for docking, screening, selling and delivering the coal, including his commissions, the sum of $1.50 per ton on all coal delivered at any point outside the yard requiring carting, and $1 per ton on all coal delivered at the yard, and an additional commission of fifty per cent of the net profits on sales, etc., and who agrees to guarantee payments on all sales, advance on the coal as it is shipped $3 per ton of the invoice price, to be drawn for at sight on bills of lading, and to pay the shippers as the coal is sold the balance of the proceeds of sale, and who also agrees not to sell the coal below the market price, and render monthly statements of accounts of sales, etc., will be, as to the coal shipped to him, a factor or commission merchant. Such a contract will not constitute the relation of vendor and vendee, or that of partner.

3. SAME—*power to sell on credit.* The law is well settled, that a factor is authorized to sell upon credit, except where the usage of trade is otherwise.

4. SAME—*party to suit on contract made in factor's own name.* Where a written contract is made by a factor, in his own name, for the purchase or sale of goods for his principal, the principal is bound, and he may sue and be sued thereon in his own name, for the reason that it is treated as the contract of the principal as well as of the agent.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

This was an action of assumpsit, by the appellees against the appellants.

The declaration contains three special counts, and the common counts consolidated.

In the first count, it is alleged that on the 25th day of June, 1872, at, etc., at the request of the defendants, through Benjamin Holbrook, their authorized agent, the plaintiffs bargained with the defendants to buy of the defendants, and the defendants, through their agent, Holbrook, sold and agreed to deliver to plaintiffs a large quantity of goods, to-wit, 300 tons of hard coal, at the price of $7.50 per ton; coal to be delivered in the yard of said Holbrook; said coal to be screened; no additional charge for storage to be made against plaintiffs until May 1, 1873. Coal to be paid for by plaintiffs, half cash, balance as fast as coal was delivered, with

interest on amount remaining unpaid until paid; plaintiffs had the privilege of calling on defendants for additional coal, at the price of $7.50 per ton, while price remained at $8.00 ; that in case price should advance to $8.50. defendants were to allow plaintiffs 75 cents from said price per ton ; that defendants paid in full for said 300 tons of coal, at the price aforesaid. ($7.50 ;) that defendants did not deliver the goods to plaintiffs ; whereby, etc.

In the second count, the allegations are substantially the same as in the first count, save that it alleges that the plaintiffs *agreed* to buy, and the defendants *agreed* to sell and deliver, and that the deferred payment on said coal was to be paid as drawn for by said defendants, with interest. etc., and alleges a special request on the 25th day of November, 1872, for the delivery of the coal to the plaintiffs, whereby, etc.

In the third count, the allegations are substantially the same as in the second count, save that the contract sued on is set out *in hœc verba*, and a special request for the delivery of the coal is alleged, on the 23d day of November, 1872.

Appellants pleaded non-assumpsit, upon which issue was joined and trial had.

Upon the trial of the case, the parties made the following stipulation as to the facts in evidence :

" It is hereby stipulated and agreed between the respective parties to this suit, by their several attorneys, as follows, to-wit :

" That Benjamin Holbrook sold the coal in question in the suit, to the plaintiffs, upon the terms contained in the contract referred to and set forth in the plaintiffs' declaration in this cause, a true copy of which is hereto attached, and marked Exhibit 'A.'

" That said Holbrook had no authority to bind these defendants other than that contained in a certain contract between said Holbrook and these defendants, dated May 10, 1872, a true copy of which is also hereto attached and marked Exhibit ' B.'

"That the plaintiffs have paid said Holbrook twenty-two hundred and fifty dollars ($2250) in full of three hundred (300) tons of coal, and that one hundred and thirty-two (132) tons of said coal were not delivered in pursuance of said first mentioned agreement.

"It is further stipulated that, if the court finds that said Holbrook had authority, by virtue of his said agreement (marked Exhibit 'B') with these defendants, to bind them, defendants, as claimed in the plaintiffs' declaration, then the court may assess the damages in the suit at fourteen hundred and fifty-two ($1452) dollars, enter judgment against defendants for the same with costs of suit—all other questions waived. It is also stipulated that between the 10th day of May, 1872, and the 1st day of November, 1872, the defendants shipped to said Holbrook, in pursuance of their said contract with said Holbrook, about eight thousand tons of anthracite or hard coal, and that the same was received at the docks of said Holbrook, in the city of Chicago, and that the said Holbrook had in his yard in Chicago, on the 25th day of June, 1872, a sufficient quantity of said coal shipped him by the defendants, in pursuance of their said contract with him (Holbrook), to have filled the said contract marked (Exhibit 'A'), set forth in the plaintiffs' declaration."

Exhibits A and B are as follows:

"EXHIBIT 'A.'

"CHICAGO, June 25, 1872.
"*Messrs. S. Goodspeed & Co.,*

"GENTLEMEN: I will sell you 300 tons hard coal, such size as you may order, for ($7.50) seven dollars fifty cents per ton, coal to be taken in my yard, and is to be screened; no additional charge for storage on same until May 1, 1873. Coal to be paid for, one-half cash, balance as fast as drawn for; interest to be paid on the half not paid for until paid for. You have the privilege of drawing on us for additional coal, while prices remain at $8.00, at $7.50, and should prices

advance to $8.50 or $9.00, will allow you 6 per cent from said price in the yard.

"Respectfully yours,

"(Signed)                                        B. HOLBROOK.

"The proposition is accepted.

"(Signed)                              S. GOODSPEED & Co."

"EXHIBIT 'B.'

"Articles of agreement entered into this 6th day of May, A. D. 1872, between Burton Bros. & Co., of Erie, Penna., parties of the first part, and Benj. Holbrook, of the city of Chicago, of the second part, witnesseth as follows: Burton Bros. & Co. agree to furnish to the said party of the second part, afloat at his dock in Chicago, his entire supply of anthracite coal, for the year commencing May 10, 1872, and ending May 1, 1873. The said party of the second part agrees to receive coal and hoist from the vessel, and put the same on the dock. pay the lake freight, and charge the cost of hoisting and putting said coal on the dock, and the lake freight paid by him, against the coal, and to receive for docking, screening, selling and delivering the coal, including his commissions, the sum of one dollar and fifty cents per ton on all coal delivered at any point outside of yard requiring carting, and one dollar per ton on all coal delivered on the yard, and an additional commission of fifty per cent of the net profits on said sales, said profits to be ascertained by deducting from said sales, the Buffalo Circular cargo prices and Buffalo lake cargo freights ruling at the time the coal is shipped, together with the cost of hoisting and putting the coal on the dock, and the amount herein stipulated for docking, screening, selling and delivering, including commission.

"The said party of the second part to guaranty payment on all sales, and to advance to the parties of the first part, on the coal as it is shipped, three dollars per ton of the invoice price, to be drawn for at sight on bills of lading, and pay over to them as the coal is sold the balance of the proceeds

16—69TH ILL.

of the said sales. The party of the second part also agrees not to sell the coal below the market price ruling at the time sales are made, and to use his best efforts to maintain remunerative prices. The said party of the second part also agrees to keep a regular set of books of account, in which shall be entered a true and correct account of all coal sold in pursuance of the agreement, and to render to said parties of the first part, on or before the tenth day of each and every month, a true, correct and intelligible statement of all coal sold during the month next immediately preceding said statement, to set forth the number of tons sold, and the price at which the sales were made. This contract subject to the printed conditions on back hereof.

(Signed)                         BURTON BROS. & CO.
(Signed)                         B. HOLBROOK.

" Foregoing contract subject to the following condition : If at any time the operations or business of the firm at the mines, or on the roads or canals on which it transports coal to any place where delivery is agreed to be made, are interrupted by floods, breaks or accidents, combinations, turn-outs or strikes among the miners, boatmen, or other employees, or from their refusal to work, for any cause whatever, or by casualties of any kind, the obligation of the firm to deliver coal under its contracts or agreements may, at its option, be cancelled to the extent of the average daily quantity the purchasers would be entitled to receive under their contracts and agreements during the time such interruption continues, and no liability shall accrue to the firm for damages by reason of such non-delivery.

" BURTON BROS. & CO.,

" Erie, Penna."

The court found for the plaintiffs, and rendered judgment for $1452, to which defendants excepted, and they bring the case to this court by appeal, and assign for error :

*First.* That the judgment was contrary to the law.

*Second.* That the judgment was against the evidence.

Messrs. CADMAN, MUNN & THOMPSON, for the appellants.

Mr. F. A. SMITH, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The relation existing between appellants and Holbrook, by virtue of their contract, is neither that of vendor and vendee, nor of partners. Holbrook agrees to receive coal and hoist from the vessel, and put the same on the dock, pay the lake freight, and charge the cost of hoisting and putting the coal on the dock, and the lake freight paid by him, against the coal, and to receive for docking, screening, selling and delivering the coal, including his commissions, the sum of $1.50 per ton on all coal delivered at any point outside of the yard requiring carting, and $1 per ton on all coal delivered on the yard, and an additional commission of fifty per cent of the net profits on sales, etc., and also to guaranty payment on all sales, advance on the coal as it is shipped $3 per ton of the invoice price, to be drawn for at sight on bills of lading, and pay to appellants, as the coal is sold, the balance of the proceeds of sales. He also agrees not to sell the coal below the market price ruling at the time sales are made, and to render monthly statements of accounts. There is nothing said about selling the coal or any interest in it to Holbrook; nor have we been able to find any language from which we can reasonably presume that the intention of the parties was to invest him with the ownership of the property. The fact that he was to receive a portion of the net profits on sales does not prove that he was a partner, as they were given merely as a part of his compensation.

We think, under the evidence, Holbrook was, as to the coals shipped to him for sale by appellants, a factor or commission merchant. *Parker* v. *Fergus,* 43 Ill. 439; *Wynne* v. *Hammond,* 37 id. 99; Parsons on Mercantile Law, 168; Story on Agency, sec. 33; 3 Kent's Com. 33.

It is well settled, that a factor is authorized to sell upon credit, except where the usage of trade is otherwise. Story on Agency, sec. 209 ; 2 Kent's Com. 622. There is nothing in this contract which positively forbids a sale of the character that was made by Holbrook, and our attention has been called to no authority holding that such a sale is beyond the power of a factor.

Where, as in this case, a written contract is made by a factor in his own name, for the purchase or sale of goods for his principal, the principal is bound, and he may sue and be sued thereon in his own name, for it is treated as the contract of the principal as well as of the agent. Story on Agency, sec. 161; *Fishback* v. *Brown,* 16 Ill. 74.

Perceiving no error in the record, the judgment of the court below is affirmed.

*Judgment affirmed.*