ALBERT B. VOORHEIS ET AL.

v.

HUGH L. BOVELL, Adm'r, etc.

1.   EVIDENCE.—In a suit by an administrator to recover for the services of deceased as manager of a store, where the evidence tended strongly to establish the fact that the compensation of such manager was to be measured by one half of the net profits, and was amply sufficient to destroy any presumption arising from the fact of his performing service that he was to be paid what such services were reasonably worth, the books of the clothing house kept during the time of such management would be admissible in evidence to show the profits and losses of the business.

2.   INSTRUCTION—EXPRESS CONTRACT.—The instruction that " an express contract is one where the parties have agreed upon an express or stipulated price " was, under the peculiar circumstances of this case, misleading. A contract of employment is no less express because the " price " or " amount," that the party may receive, is not agreed upon in advance, but is made to depend upon the uncertain result of some business venture, or upon some other contingency which will in the future determine the compensation to be received.

3.   WITNESS.—An instruction that " to render conversations between * * * worthy of consideration as evidence, it is necessary that the witnesses who testify to such conversations should be able to give the *substance of all* that was said in such conversations," is erroneous.

APPEAL from the Circuit Court of Crawford county; the Hon. WILLIAM C. JONES, Judge, presiding. Opinion filed November 24, 1886.

It appears from the record in this case that Lutes, appellee's intestate, and his brother, failed in the clothing business in the spring of 1879, and made an assignment for the benefit of their creditors. The firm was owing the appellants more than all their other debts combined. The assignee sold all the assets to appellants, and on April 1, 1879, they opened the Robinson Clothing House, with Lutes as manager, who had charge of the business until Dec. 1, 1884. It appears that he kept the books of the new firm, made all the purchases, and rendered weekly accounts of sales, expenses, etc., to appellants, who were non-residents of the State. Lutes died in 1885, and this suit was

Voorheis v. Bovell.

brought by his administrator to recover for his services as such general manager for appellants. The appellee recovered $2,000, and the defendants appealed.

Messrs. OLWINE & NEWLAND and Messrs. WILSON & HUTCHINSON, for appellants.

Messrs. CALLAHAN & JONES and Messrs. ROBB & BRADBERRY, for appellee.

PILLSBURY, J. ·The contention upon the trial below was, under what terms or arrangement did Lutes perform the services for appellants. ˙ The appellee insisted that they were performed without any express contract, and that he was entitled to recover as upon a *quantum meruit*, and did succeed upon that view.

The defendants insisted that after they bought the stock, they agreed that Lutes might take charge of the store, manage it in their name, and to have for his services one half of the net profits, and out of the profits they were to be paid their claim against the former firm of Lutes Bros., less any dividends they might receive through the county court in settling up that estate. It does not appear that any witness testified to hearing any contract made between Lutes and appellants, but they called one G. W. Harper, who testified that he was the assignee of Lutes Bros. and as such sold the stock of goods to appellants, and then stated : " I think it was the day after I ·sold the stock of Lutes Bros., that I had a conversation with Mr. Voorheis and Mr. Lutes in my office. Mr. Voorheis said in that conversation, in the presence of Mr. Lutes: 'I am going to give Mr. Lutes a better chance than he has ever had before. I am going to give him a chance to make some money.. Mr. Lutes is to have one half the profits, and out of the profits of the stock he is to pay our claim in full, less dividends.' Mr. Lutes seemed pleased and said he was going to try to live more economical, and try and save something. They also talked of the manner of conducting the business, and Mr. Lutes said he could collect more of the notes and accounts I had sold Voorheis than any one else, by continuing the busi-

ness." The substance of that conversation was, that Voorheis·
and Miller were to get their claim against Lutes Bros. in full,
less dividends, out of the profits of the business; on his cross-
examination, he testified : " This conversation was in my office,
after the sale of Lutes Bros. had been made, and I think it
was the next day. I was not called on as a witness to any con-
tract. I understood that they were stating a contract that had
been made. Mr. Voorheis said that out of the profits of the
business, their claim was to be paid in full, less dividends. I
heard all that conversation and have given the substance of it.
.It was in another and later conversation, when Lutes said he
thought he could live on $300. Mr. Voorheis said that he
was going to give Lutes an interest in the sales, and out of the
profits they would get their money." Thomas Browning tes-
tified : " I had a long talk with Mr. Lutes about his business
in August or September, 1884. He died in March, 1885·;
.Lutes said if he had good luck and his health got better, it
would not be very long until he was his own boss. He did
not explain his meaning." · ·

John Olwin testified : "I talked with·Lutes, fall of 1884, about
the store ; I was thinking of taking charge of the business my-
self. I asked him to state the facts as to how he was manag-
ing the business; he said, 'The goods are bought and put in
here ; all expenses are paid out of sales, and the net profits
·are divided by two and I get one half.' I was negotiating
with Miller and Voorheis myself, and. proposing to take Mr.
Lutes' place; Lutes said the sales run from $12,000 to $15,000.
a year, and profits·from 20 per cent. to 25 per cent. with ex-
·penses about $1,200 a year." Cross-examination : " Mr. Lutes
was not trying to sell ·me the stock. I was negotiating with
Voorheis and Miller to buy the stock; had corresponded with
them about it." Dillon Fowler testified : "I am clerk in the
·Robinson clothing house. Have been there several. years.
·Mr. Lutes first hired me at $30 a month, then at $40. I heard
Lutes say several times, if things continued as they were and
.business kept good, he would own the entire store." The
appellants after introducing the above testimony, offered the
books of the Robinson clothing house, to show the profits and
.losses of the business, but upon objection the court held that

they could only go in evidence to show any payments made to Lutes by the defendants, and to show the annual sales of stock under the management of Lutes and the amount of expense. Exception was taken to this ruling and is urged here as error. We are unable to perceive why the books should not be admitted in evidence for the purpose for which they were offered. The evidence already introduced, tended strongly to establish the fact that the compensation of Lutes was to be measured by one half of the net profits of the concern managed by himself, and in our opinion it was amply sufficient to destroy any presumption arising from the fact of his performing service that he was to be paid what such services were reasonably worth. The books then would undoubtedly show, if the jury should find a special contract established, the true measure of his recovery under that contract, as they would show what net profits, if any, had been made in the business.

To limit their effect to the amount of annual sales and the expenses, would not prove the amount of profits made as the cost of the goods would have to be taken into the account. We do not understand that the contract to give him a certain share of the profits as compensation for his services, necessarily made him a partner: Burton v. Goodspeed, 69 Ill. 237; but if it did, the proof of such fact would defeat the present action. If he was to receive one half of the net profits, the appellants certainly should have been permitted to prove what such profits were. Some of the instructions for the plaintiff we think are somewhat misleading as applied to the facts of this case, but we will not attempt to notice them in detail, as the point can be made clear by reference to the fourth, which informs the jury that an express contract is one where the parties have agreed upon an express or stipulated price, and an implied one is where work has been done by one party for the benefit of another, and which has been accepted by him, and no express or stipulated amount has been agreed upon. The idea conveyed by this instruction seems to pervade the entire series given upon the question of the character of the contract, and from them the jury must have understood that no express contract could exist unless a "stipulated price" or a "stipulated amount" had been agreed upon as compensation for the

services.   The contract of employment is no less express, be-
cause the " price " or " amount," that the party may receive
is not agreed upon in advance, but is made to depend upon the
uncertain result of some business venture or upon some other
contingency, which will in the future determine the compensa-
tion to be received.   The fifth instruction is as follows: "The
court instructs the jury that in order to render conversations
between Howard B. Lutes and witnesses, or between Lutes and
Voorheis in the presence of witnesses, worthy of consideration
as evidence, it is necessary that the witnesses who testify to
such conversations, should be able to give the substance of all
that was said in such conversations."   When it is remembered
that all the evidence introduced in support of the theory of a
special contract consisted of conversations had by Lutes with
the appellants or the witnesses, the effect of this instruction
could not but be very prejudicial to the defendants below.   It
is very rarely indeed, that we find a witness of such remarkable
memory, as to recall the substance of all that was said in a
conversation occurring years before, and yet portions of it may ·
be fully recollected by him, and may contain statements or
admissions covering the very point at issue, and he be able
fully to detail upon the witness stand the substance of such
statements ; and is the jury not to consider the testimony of
such witness worthy of any consideration, because he can not
give the substance of all that was said in such conversation?
We know of no case, and it is believed none can be found,
that announces such a rule of evidence.   If the recollection of
the witness as to everything that was said is at fault, that fact
may affect the weight that should be given to his testimony,
but it can not be conceded that his testimony is for that rea-
son unworthy of consideration by the jury.   It is objected that
the court erred in refusing to admit in evidence the claim of
the appellants filed in the county court, and the amount of
the dividends that had been paid thereon.   The record does
not disclose the claim, nor wherein the proposed evidence
would be material, and we can not therefore say error was
committed in this respect.   For the reason given, the judg-
ment must be reversed and the cause remanded.

                                        Judgment reversed.