| 43   241 |
|147s  260|

## John Snowball

v.

## The People of the State of Illinois ex rel. William Grupe.

Quo Warranto—*Right to Office—Jurisdiction of Circuit Court—Schools.*

1. An election must be held at the time and place required by law.

2. Whether a person who claims the right to, and exercises the powers of, a public office, has been lawfully elected, is a question in which the people have an interest, and they have the right to test the incumbent's title to the office by a proceeding in *quo warranto* and have him ousted if he has usurped the same, and Circuit Courts in this State have jurisdiction of such proceedings.

3. In a proceeding in *quo warranto* to try the title of a person named, to the office of member of the board of education of a school district in a certain county, composed of territory lying partly without and partly within a certain city, this court holds, that the judgment of ouster was properly entered therein, Chap. 46 R. S. 665, 1889, not having been observed as to that portion of the district outside said city.

[Opinion filed June 21, 1892.]

APPEAL from the City Court of East St Louis, Illinois; the Hon. B. H. CANBY, Judge, presiding.

Mr. F. G. COCKRELL, for appellant.

Messrs. M. MILLARD and M. D. SCHAFER, State's Attorney, for appellees.

There are only two principal questions in the case:

1.   Whether the court had jurisdiction in a proceeding by *quo warranto* to try the defendant's right to the office.

2.   Whether the poll established at the Allerton House should be regarded as an authorized voting place.

As to the first point, it is necessary to look into the legislation upon the subject, as well as the cases.   There is nothing in the election law manifesting an intention to take away any jurisdiction the courts had in determining the validity of elections, so far as that might be necessary in adjudicating upon the rights of parties to an office.

" The principle is that the jurisdiction of the courts remains, unless it appears with unequivocal certainty that the legislature intended to take it away."   Dillon's Municipal Corporations, Sec. 202, 4th Ed., 141, old number.   And this court so regarded the rule in People v. Bird, 20 Ill. App. 568.

The Supreme Court, also, in the following unreported cases, has said it is the proper remedy against one illegally holding a local office.   Rafferty v. Gorman, 27 N. E. Rep. 194; Burgess v. Davis, filed at Ottawa, Oct. 31, 1891.

But if it were necessary to give a construction to the provisions of the statute relating to contested elections, which would make it an exclusive remedy, and thus take away the jurisdiction of the courts to proceed by *quo warranto*, that is not a tenable position now, because the act in relation to *quo warranto* took effect in 1874; and that necessarily restored any jurisdiction lost by the operation of the election law, which was passed in 1872.

These statutes are both affirmative in their provisions, and while it is the true view to hold that the election law did not repeal or affect the old *quo warranto* act, still, if that is not

accepted as a proper construction, the enactment of a law giving this remedy again to the courts must be regarded as an intent to re-invest them with jurisdiction.

These were always concurrent remedies, however, and still are; and there is no way of arriving at a different conclusion, without saying that the election law operated as a repeal, to a certain extent, of the old *quo warranto* act; and when this is affirmed, it follows that the same rule of construction must be applied to the later statute "reversing the law in relation to *quo warranto*," which in turn repeals or modifies the election law.

It is agreed in this case, and it is the fact, that the board of education did not at any time fix or designate a polling place "within the territory lying outside of the city," and that the president of the board, about eight o'clock on the morning of the election, with the consent of the other members, repaired to the Allerton House, situated in such outlying territory, and established the poll, at which seven votes were cast for appellant.

These votes gave appellant his majority, and there is no dispute about the polling places and votes cast in the city.

The present school law provides that the board shall give ten days' notice of the time and place of holding an election; and if no notice shall have been given for the annual election, then that ten days' notice shall be given for some other day. Art. 6, Secs. 6, 7.

An election held without the notice required by law, is void. People v. Ringe, 54 Ill. 123; Williams v. Potter, 114 Ill. 628.

The above are selected from a great number of cases sustaining the rule, on account of some additional features parallel with the case at bar.

In the first case it was held not sufficient for the city council to meet on the day before the election and have a verbal understanding when the election should be held, and that the record be subsequently made up accordingly.

In the other case it was held, that when a number of persons assemble at a place not authorized by law, organize a poll,

receive and count the votes, the whole proceeding is illegal and void, however well intended.

· The case cited by appellant, Simmons v. The People, 18 Ill. App. 588, needs but little attention, as it is not only at variance with the best authorities on the question, but the general practice in this State.

Besides, it does not appear the court's attention was called to the fact that the present *quo warranto* act is subsequent to the election law, and by express terms authorizes the proceeding.

As to the contention that Grupe lost whatever rights he had to the office by attempting to contest under the statute, the obvious answer is that his interests in this proceeding are of no consequence. The question is not whether Grupe is entitled to the office, but whether Snowball holds it under a good title. It makes no difference whether Grupe is in or out of the case, as it concerns public rights alone. Chesshire v. The People, 116 Ill. 493.

In that case *quo warranto* was brought to oust some school directors, and the court say, in answer to an objection, that the information did not involve a "matter of private right," but concerned "the public alone."

GREEN, P. J. This was a proceeding in *quo warranto* to try the title of appellant to the office of member of the board of education of a school district in St. Clair County, composed of territory lying partly within, and partly without the city of East St. Louis. The cause was tried by the court upon a written stipulation of facts, whereby it was admitted the board of education of said district held a meeting and made a general order for the holding of an election to elect members of said board, and gave proper notices thereof to the board of election commissioners of said city, whose duty it was to appoint judges and clerks of election, fix the polling places, and give notice for holding said election in that portion of the territory *lying within* the limits of the city, and that the commissioners performed this duty. That the board of education caused notices of said election to be posted as required by

law, but made no order at any time fixing any polling place within the territory *lying outside* of said city, nor appointed any judges or clerks for said outlying territory. That on the morning of the day of election, about eight o'clock, the president of the board of education, with the consent of other members thereof, with a ballot box, repaired to the Allerton House, situated within said outlying district, and informed certain voters then assembled, that they had the right to establish a polling place in said outlying territory, appoint judges and a clerk of election, and cast their votes for president and two members of the board of education, and that all the voters living in said territory had the right to vote at such polling place, and could not vote elsewhere at said election. Whereupon, said voters present selected two of their number as judges, and one as clerk, who were duly sworn and cast their own, and received the votes of others, and at said polling place, seven votes were cast for Snowball and none for the relator, Grupe. That said polling place was kept open during the time required by law, and the vote duly certified to said election commissioners, and was, together with the vote cast inside of the city, within seven days thereafter, presented to the County Court, and was there duly canvassed by the county board, and said Snowball was declared duly elected, received his certificate of election, was admitted as a member of the board of education, and is now exercising the duties of said office. The remaining facts admitted by the stipulation relate to proceedings in the County Court by Grupe against Snowball, to contest the election, and are not material, inasmuch as the questions here involved are concerning a public right, and not the personal private rights of Grupe. It appears also that the seven votes cast for the respondent at the Allerton House gave him his majority, and without them he was not elected. As we understand this case, two questions only, require consideration: first, had the Circuit Court jurisdiction and power to try and to determine the question of respondent's title to said office in a *quo warranto* proceeding? second, was the polling place at the Allerton House lawfully established, and can the votes cast there be held to be votes

which legally ought to have been counted for the respondent?
Whether a person who claims the right to, and exercises the
powers of a public office has been lawfully elected, is a ques-
tion in which the people have an interest, and they have the
right to test the incumbent's title to the office by a proceed-
ing in *quo warranto* and have him ousted if he has usurped
said office.   Chesshire v. People, 116 Ill. 493.   This court, in
People v. Bird, 20 Ill. App. 538, sustained the Circuit Court
in taking jurisdiction in *quo warranto* to test a person's title
to an office, and we repeat what we there said : that we can
not hold Circuit Courts in this State have not jurisdiction of
such proceeding, and power to test and determine the title to
a public office and oust one who has usurped the same, and
thus prevent a wrong to the people.   We have not as yet
been furnished with any sufficient reason or authority for
receding from that opinion.  ˙ With regard to the second ques-
tion, it is sufficient to say that the power to fix the time and
place of holding said election and to appoint judges and clerks
thereat in that part of the school district lying outside of the
city, is given by law to the board of education.   Chap. 46, R.
˙S., 665, 1889.   It is admitted in this record that that body did
not locate the polling place, nor appoint the judges or clerk
at the election held outside˙ of the city of East St. Louis, but
that a few persons assembled at a place not authorized by law,
organized and held an election for members of said board of
education, and received and counted seven votes for the re-
spondent.   The whole proceeding was illegal and void, and said
votes were illegally counted for Snowball, and he was not
legally elected.    Williams v. Potter, 114 Ill. 635.    In Ste-
phens v. People, 89 Ill. 342, this doctrine, announced in Mc-
Creary on Elections, Sec. 109, is cited with approval : "It is, of
course, essential to the validity of an election that it be held
at the time and in the place provided by law."   Enter-
taining the views above expressed, it follows that we hold
the judgment of ouster against defendant was properly en-
tered, and it is affirmed.

*Judgment affirmed.*