# C. E. Freet, Trading as Fyricide Mfg. Co., Appellant, v. American Electrical Supply Co., Appellee.

## Gen. No. 16,818.

1. PRINCIPAL AND AGENT—*evidence of agent's authority to contract.* Where a principal suing a sales agent, who has repudiated his contract of employment, contends that the principal's representative, who signed the contract, had only special limited authority, a letter from the principal answering an inquiry as to the authority, stating that the representative "has a contract with us giving him authority to make and sign contracts for this company," is competent evidence as tending to show a general authorization.

2. PRINCIPAL AND AGENT—*when contract of employment is evidence of agency.* A contract headed "Agency Contract" providing that a salary be paid a sales agent; that the principal shall provide circulars, naming the minimum amount of sales that shall be made, giving an optional right to cancel the contract, providing for the price on sales; that the agent shall purchase a certain number of articles which will be repurchased if not sold; and that the agent shall have the right to collect all moneys for sales, remitting the surplus after deducting his salary, established a relation of principal and agent and not of vendor and vendee.

3. PRINCIPAL AND AGENT—*when contract of employment is obtained by fraud.* Where a representative of a company employs a sales agent to sell fire extinguishers under a contract that the agent shall canvass the territory through subagents and shall purchase a certain number of extinguishers, and the representative offers to canvass certain cities and sends in orders that the agent believed were *bona fide* but were made upon the same form as the agent's contract and payment is refused by the parties, there is some evidence that the employment contract was obtained by fraud chargeable to the principal, and the agent may repudiate the contract and return the extinguishers.

4. APPEAL AND ERROR—*instruction should be abstracted in full.* On abstracting an oral instruction it should be set out in full.

5. APPEAL AND ERROR—*necessity of objections and exceptions.* An oral instruction will not be reviewed if no objections or exceptions thereto are preserved in the record.

Appeal from the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed July 9, 1912.

HOYNE, O'CONNOR & IRWIN, for appellant; CARL J. APPELL, of counsel.

HARRY P. SIMONTON, for appellee.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

In March, 1907, the appellee, American Electrical Supply Co., a corporation of Illinois, hereinafter called defendant, entered into a contract with the appellant, C. E. Freet, hereinafter called the plaintiff. The negotiations which led up to the contract were made by one George E. Weiler, the contract being signed thus: "The Fyricide Mfg. Company, Geo. E. Weiler, Special Representative," "American Electrical Supply Co. (Seal) W. H. Gross, Treasurer."

By the terms of the contract the plaintiff engaged the defendant as general sales agent for Fyricide extinguishers in the "City and vicinity of Chicago and entire State of Illinois for a period of twelve months," and agreed to pay for such services a salary of $125 per month. The plaintiff agreed to canvass the territory under the contract three times in each year, and to turn over all orders received to the defendant. The plaintiff also agreed at his own expense to supply circular matter for the proper handling of the trade, and to sell and deliver $1,000 worth of Fyricide extinguishers to the defendant. He further agreed to repurchase the extinguishers on hand upon the fulfillment of the contract. The defendant on its part agreed to devote a reasonable amount of time, through its agents, to promote and insure the success of the agency. It further agreed to carry a stock of extinguishers of the value of $1,000, that is to say, 800 of them. The plaintiff retained the right to cancel the contract under certain conditions, and there were other provisions which it is not now necessary to relate.

After making the contract referred to, Weiler ar-

ranged with the defendant to solicit orders in Illinois. He did so, and led the defendant to believe that the orders (three in number) which were sent in and which were filled by the plaintiff were *bona fide* ones at certain prices mentioned. It seems, however, that in each instance the contract entered into by Weiler was made upon the same form as that entered into between the parties to this litigation. They provided a less salary per month; provided for the carrying of a certain amount of stock, etc. One of the contracts referred to, namely, that with the Hawthorne Hardware Co., was offered in evidence and appears to have been signed thus: "American Electrical Supply Co.; The Fyricide Mfg. Company, Geo. E. Weiler, Special Representative; Hawthorne Hardware Co., H. H. Luby, Pres." The other two were signed in a similar manner.

The defendant, when it undertook to collect on the contracts referred to, learned for the first time the nature of the contracts to which the name of the defendant was signed, as well as that of the plaintiff as Fyricide Mfg. Company. Payment was refused by each of the parties, thereupon the defendant repudiated the contract with the plaintiff and shipped to him the 800 extinguishers. Those shipped by the Hawthorne Hardware Company were also returned to the plaintiff, but he refused to receive them.

Thereafter this suit was brought, the plaintiff demanding $1,780 for the extinguishers delivered to the defendant and to the three supposed customers. The defense interposed was that the contract was obtained by fraud. There was a trial before the court and a jury, and judgment entered in favor of the defendant upon a verdict rendered by the jury in its favor. The court at the time was asked to instruct the jury to direct a verdict in favor of the plaintiff for the full amount of his demand, namely $1,780. This instruction was refused, and an exception taken. Thereupon an-

other motion, to the effect that the jury be instructed to render a verdict in favor of the plaintiff for the sum of $1,000, was made by the plaintiff, and was likewise refused. To this action an exception was preserved by the plaintiff.

The grounds alleged for reversal are, first, that the court erred in refusing to instruct the jury to find the issues for the plaintiff for the full amount of his claim; second, that it erred in refusing to instruct the jury to find for the plaintiff as to the $1,000 item; third, that improper evidence was received; fourth, that erroneous instructions were given.

We have carefully read the abstract in the case, and are of the opinion that there was sufficient evidence to warrant the court in submitting to the jury the question as to whether or not the defendant was induced to sign the contract upon which the case was based by the fraudulent conduct of the plaintiff or that of an agent for which plaintiff was responsible.

A large part of the argument of the plaintiff is addressed to the proposition that Weiler had only special, limited authority. The plaintiff in his testimony stated that there was a written contract between him and Weiler, but this contract was not produced. Four contracts were made by Weiler, presuming to act for the plaintiff and, in three of them, as heretofore stated, for the defendant also. In response to a letter addressed to the plaintiff as the Fyricide Mfg. Co., asking as to Weiler's authority, plaintiff replied: "We have yours of the 2nd in reference to Mr. Weiler's authority to make and sign contracts for us. In regard to which will state that he has a contract with us giving him authority to make and sign contracts for this company, and we will add that he has been very successful in closing contracts for us. Yours very truly, The Fyricide Mfg. Co., C. E. Freet." The admission of this letter in evidence by the trial court is one of the points most strenuously insisted upon as

ground for reversal. We think it was competent as tending to show a general authorization by the plaintiff to Weiler. The defendant in the transaction leading up to the making of the contract knew no one else than Weiler as representing the plaintiff. The contract specifically provides that the plaintiff should canvass the territory covered by the defendant's contract, namely the State of Illinois, three times in each year. It was quite natural, therefore, that, when Weiler offered to go to other cities than Chicago in the state and canvass, the defendant should assume that he was doing so in conformity with this provision of the contract.

We agree with the defendant in its contention that the contract was essentially an agency contract. It is headed "Agency Contract," and provides for a salary to be paid to the defendant, and that circulars, etc., should be provided by the plaintiff: It also names the minimum amount of sales which shall be made each month, and provides for the cancellation of the contract at the option of the plaintiff if such sales do not equal $2,700 at the end of six months. It provides at what price sales shall be made, naming a smaller price for same to dealers than to consumers. It further provides that "said second party (the defendant) shall have the right and authority to collect all moneys for sales made through said agency, and at the end of each month, after deducting from the amount of said sales $125 for salary, and the difference between the billing price and selling price to the dealer or consumer, the said second party shall remit the balance for said sales to the said first party." All of these provisions of the contract tend, in our opinion, to establish the proposition that the essential character of the contract was that of agency, and that the relation between the parties was not by this contract made that of vendor and vendee. (Burton et al. v. Goodspeed et al., 69 Ill. 237.) If it were intended by the contract

to create the relation of vendor and vendee, surely the provision last referred to need not have been inserted. The defendant, if such were the character of the contract, would have required no authority from the plaintiff to collect moneys which might be due upon a resale.

It is true the defendant may be said indirectly to have agreed to purchase 800 extinguishers and to carry the same in stock, but this was incident to the main purpose of the contract, which was that the defendant should act as the selling agent of the plaintiff in the State of Illinois. The defendant dealt only with Weiler, and his actions and representations which led up to the making of the contract with the defendant must, in our opinion, be regarded as though made by the plaintiff himself. If, at the time these representations were made, Weiler intended that the plaintiff should not in good faith carry out the provisions of the contract with regard to canvassing the state, that was proper matter to be considered by the jury upon the question as to whether or not fraud entered into the making of the contract, with which the plaintiff, by operation of law, should be charged.

Immediately upon the signing of the contract between the parties hereto, Weiler made contracts with the three concerns heretofore referred to, whose respective places of business were at Elgin, Rockford and Peoria, Illinois. In this matter he apparently undertook to act as agent both for the plaintiff and the defendant. The signature to the contract with the Hawthorne Hardware Company was signed by him for the plaintiff under the name of Fyricide Mfg. Company, as its special representative. The character of the agency which he assumed to have for the defendant is not shown in the instrument. His whole conduct with reference to these three instruments tends, in our opinion, strongly to support the theory of the defendant that the contract with it was not entered into in good

faith and that the defendant was induced to enter into it through the fraudulent practice of Weiler.

In a letter written by the plaintiff to the defendant under date of April 17, 1907, the following language was used: "For your information will state, if not previously advised, that promptly upon our confirming the reports regarding Mr. Weiler's nefarious practices, we immediately dispensed with his services." In the same letter it was stated: "At the time of writing our letter of the 11th, we were advised that Mr. Weiler was lying seriously ill at a hotel in Detroit, not a hospital as you state, but since that time we are in receipt of advices by message over Mr. Weiler's name to the effect that he is now under arrest in the Wayne county jail at Detroit, which is probably the result of some of his misrepresentations at that point."

Without further discussion of the evidence, we state it as our opinion that the testimony in the record was sufficient to warrant the conclusion of the jury that the contract sued upon was obtained by fraud; that this fraud is chargeable to the plaintiff, and was sufficient to warrant the defendant in repudiating the contract made.

Complaint is made of certain portions of the charge of the court to the jury. The record shows that certain instructions were given to the jury as "instructions for defendant," whatever that may mean. It also shows that the court orally instructed the jury. For some reason the plaintiff (appellant) did not set out in the abstract of record all of the charge of the court given to the jury. This should have been done, for otherwise this court might have been misled. We have, however, been advised by an additional abstract furnished by the defendant as to what the record shows in this regard. We do not find in the record objections made to the charge, nor were any exceptions preserved in the record in respect to any portions of the charge. It is therefore unnecessary for us

to comment or pass upon any of the objections now raised to it.

We find no error in the record of such a character as would warrant a reversal of the judgment, and the same is affirmed.

*Affirmed.*